COMMONWEALTH EDISON COMPANY, Plaintiff-Appellant, v. THE PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellees.

Second District Nos. 2—90—0715 through 2—90—0720 cons.

Opinion filed September 17, 1991.—Rehearing denied November 1, 1991.

Robert A. Creamer and John S. Vishneski III, both of Keck, Mahin & Cate, of Chicago (Minard E. Hulse, Jr., of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Michael J. Waller, State's Attorney, of Waukegan (Charles B. Hughes and Deborah L. Ahlstrand, Assistant Attorneys General, of Chicago, and Helen S. Rozenberg and Steven Burgeman, Assistant State's Attorneys, of counsel), for appellee Property Tax Appeal Board, Lake County Board of Review.

William T. Barker and Jacqueline S. Glassman, both of Sonnenschein, Carlin, Nath & Rosenthal, and George W. Foster, both of Chicago (Frederic S. Lane, of counsel), for other appellees.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Commonwealth Edison Company, appeals from a judgment of the circuit court of Lake County which, on administrative review, confirmed a decision of the Property Tax Appeal Board (PTAB). Said decision found that plaintiff's power generating machinery and equipment (machinery) located in its Zion power plant was properly assessed

as real property for the 1978 tax year. Plaintiff raises one general issue, namely, whether said machinery is to be assessed as personal property or as real estate for the 1978 tax year. This general argument is broken down into three specific arguments: (1) the Zion assessor's 1978 classification of Edison Power generating equipment constitutes an unconstitutional tax on personal property; (2) the 1978 classification of plaintiff's power generator equipment as real estate violates the pertinent uniformity provision of the Illinois Constitution; and (3) the exclusion of plaintiff's evidence classifying power generating equipment as personal property was error.

Plaintiff appealed the subject property's 1978 real estate tax assessment to the Lake County board of review which found that the disputed machinery was properly assessed as real property. Plaintiff argued that it was entitled to a personal property deduction of $417,555,717 from its 1978 Zion real estate assessment, rather than the $9,813,106 personal property deduction it was allowed. Plaintiff then appealed this decision to the PTAB for review, naming the board of review as a party defendant. Thereupon, defendants Zion-Benton Township Public School District No. 126, Zion Public School District No. 6, Zion Park District, the City of Zion, Zion Township and Zion-Benton Public Library District (collectively Zion) were granted leave to intervene as parties of record before the PTAB. After extensive proceedings, the PTAB found for defendants. Specifically, it held that evidence showed that (1) the subject machinery was sufficiently affixed to the real property to be considered part of same; (2) the subject machinery was applied to the use and purpose to which the real estate is devoted; and (3) plaintiff intended to make the subject machinery a permanent accession to the property. On administrative review, the circuit court affirmed the PTAB's decision, and this appeal followed.

We initially note that essentially the same principles, as well as the same attorneys, have been before this court in *Commonwealth Edison Co. v. Property Tax Appeal Board* (1983), 115 Ill. App. 3d 371, which was appealed to our supreme court in *Commonwealth Edison Co. v. Property Tax Appeal Board* (1984), 102 Ill. 2d 443. The issues in that cause, dealing with the 1975 and 1976 real estate assessments of the very same power plant, are not relevant here. However, it is demonstrative what plaintiff did not argue in said appeal. Despite the fact that as of January 1, 1979, the ad valorem personal property tax was terminated by the Illinois Constitution of 1970, plaintiff did not argue that the subject power generating machine should be assessed as personal property, even though said machinery had been assessed as real property since the power plant's opening in 1973. Now plaintiff comes before us,

arguing that the 1978 assessment, issued a mere two years after the subject assessments of the prior appeal, as well as being the final assessment before personal property taxes were abolished, erred in classifying said machinery as real property, rather than personal property.

First, plaintiff argues that the PTAB erred in finding that the subject machine was properly determined to be real property.

The machinery in dispute consists of piping systems, pumps, turbine generators, a nuclear reactor vessel, control rods and the fuel handling system. The evidence clearly indicates that same was installed in the Zion power plant with the intention that it would remain there permanently. To remove same, while a possibility, would require extensive alteration of the premises, including removal of reinforced concrete walls. The evidence further demonstrated that, since the Zion plant opened, the subject machinery has been assessed as real property.

■ Illinois' system of taxing personal and real property is based upon the Revenue Act of 1939 (Act) as amended. (Ill. Rev. Stat. 1977, ch. 120, par. 481 *et seq.; Commonwealth Edison Co. v. Property Tax Appeal Board* (1983), 115 Ill. App. 3d 371.) The Act defines "real property" in pertinent part thusly:

> "*Real Property—Real Estate—Land—Tract—Lot—Not only the land itself, whether laid out in town or city lots, or otherwise, with all things contained therein, but also all buildings, structures and improvements, and other permanent fixtures, of whatsoever kind, thereon.*" (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 120, par. 482(13).)

The definition's language pertinent to this case was derived from section 292 of the Revenue Act of 1872, as amended. Ill. Rev. Stat. 1929, ch. 120, par. 292.

■ Of relevance is the following excerpt from the Illinois Constitution, which states:

> "On or before January 1, 1979, the General Assembly by law shall abolish all ad valorem personal property taxes and concurrently therewith and thereafter shall replace all revenue lost by units of local government and school districts as a result of the abolition of ad valorem personal property taxes subsequent to January 1, 1979." Ill. Const. 1970, art. IX, §5(c).

■ As mandated by the Constitution of 1970 (Ill. Const. 1970, art. IX, §5(c)), the General Assembly enacted the Illinois Replacement Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 499.1) to replace the revenues lost by the abolition of the personal property tax. Section 18.1 of that act includes the following provision:

"No property lawfully assessed and taxed as personal property under this Act prior to January 1, 1979, shall be classified as real property subject to assessment and taxation under this Act after January 1, 1979. No property lawfully assessed and taxed as real property under this Act prior to January 1, 1979, shall be classified as personal property subject to assessment and taxation after January 1, 1979." Ill. Rev. Stat. 1979, ch. 120, par. 499.1.

■ With this background, we now review the relevant case law. In essence, plaintiff argues that the "continuous connected physical properties" doctrine as espoused in *Shelbyville Water Co. v. People ex rel. Craddick* (1892), 140 Ill. 545, controlled the Illinois assessment process in 1978. Said doctrine, arising out of the Revenue Act of 1872 (Ill. Rev. Stat. 1929, ch. 120, par. 25), defines as personal property all elements physically connected to the manufacturing process. Plaintiff maintains that the disputed machinery is used in the process which generates the product (electricity) created within the power plant; therefore, under *Shelbyville*, it constitutes personal property. Accordingly, Commonwealth Edison argues that personal property in the amount of $417.5 million should be deducted from the subject property's 1978 assessment.

■ In contrast, defendants contend that the subject machinery must be classified as real property. Defendant first cites *Joyner v. Mitchell* (1932), 267 Ill. App. 427, wherein the court considered whether certain items of machinery were subject to foreclosure under a real estate mortgage. The machinery consisted of three lathes ranging in weight from 400 to 6,000 pounds, a milling machine weighing approximately 5,000 pounds and a drill press weighing 2,500 pounds. In concluding that these items were permanent fixtures and therefore a part of the realty, the *Joyner* court stated:

"If machinery is intended for permanent use in carrying on the business for which the building was erected or is used, as a permanent accession to the realty, it becomes a part of the realty on being installed thereon, and if such was the intention, it is immaterial that the machines may be removed and used elsewhere, and that they may be removed without injury to the building. This rule has special application to heavy machinery intended for the building and not intended to be moved from place to place, though resting in position by its own weight, and to machinery which is a constituent part of a factory or shop and indispensable thereto, though not actually fastened." *Joyner*, 267 Ill. App. at 429-30.

The *Joyner* holding was adopted in the taxation case of *Ayrshire Coal Co. v. Property Tax Appeal Board* (1974), 19 Ill. App. 3d 41, in

which the court reviewed a circuit court decision rejecting the PTAB's classification of certain heavy machinery and equipment as real estate. The equipment in question included a 250-ton hopper, various conveyor belts and sizing and cleaning equipment used in coal preparation.

■ The *Ayrshire* court examined the way in which the machinery was attached to the realty. The court held that equipment welded to supporting piers or foundations, or held down by nuts and bolts, is annexed to the realty. The subject machinery could be dismantled and, in fact, would be moved when the coal ran out. The *Ayrshire* court concluded, however, that because the machinery was specifically adapted to the use of the realty, a presumption arose that the improvements were intended to be permanent fixtures, regardless of their method of attachment. The court then stated:

"Many authorities take the position that any and all machinery essential to the proper functioning of a plant, mill, or similar manufacturing is a fixture, or is at least so presumed to be, irrespective of the manner in which it is annexed to the realty and even though it is not attached thereto at all. *This view is sometimes referred to as the 'integrated industrial plant' doctrine and represents the modern trend of decisions.* [Citations.]

84 C.J.S. *Taxation,* sec. 73, states, 'Machinery used in a mining or manufacturing or other business establishment constituting a part of the plant and indispensable to its operation as such is commonly taxed with, and as a part of, the realty, and is not subject to taxation as personal property,' and 'It has been declared that in matters relating to taxation, rules more nearly conforming to those used in determining what constitutes fixtures as between grantor and grantee, vendor and vendee, or mortgagor and mortgagee should apply rather than the rule used in what constitutes removable fixtures as between landlord and tenant.'

Where property is adapted to the use to which the realty is devoted the use thereof in such manner furnishes such strong evidence of intent to make it a part of the freehold as not to be overcome by bookkeeping practices." (Emphasis added.) *Ayrshire,* 19 Ill. App. 3d at 45-46.

In *Cherry Bowl, Inc. v. Illinois Property Tax Appeal Board* (1981), 100 Ill. App. 3d 326, this court considered whether the PTAB had properly classified pinsetters and bowling lanes as permanent fixtures and, thus, real estate. After reviewing the holding in *Ayrshire,* the court affirmed the PTAB's classification as not contrary to the manifest weight of the evidence. (*Cherry Bowl, Inc.,* 100 Ill. App. 3d at 331.) The *Cherry Bowl* court held:

"We particularly note that the pinsetters and lanes were installed by plaintiff in its building which was constructed primarily for that purpose. These lanes and machinery were said to have a useful life of 20 to 50 years, and plaintiff intended to use them while it owned and operated the bowling establishment. Under these circumstances the property in question must be considered as permanent fixtures and improvements to the land and as real property for purposes of taxation." *Cherry Bowl, Inc.*, 100 Ill. App. 3d at 331.

The *Cherry Bowl* court then found it inappropriate to consider whether they would have been deemed removable trade fixtures (and therefore personalty) had they been installed by a tenant rather than by the owner. The court stated:

"Plaintiff also contends that the rules applied in landlord and tenant cases as to the nature of fixtures should be applied in taxation cases. As the *Ayrshire Coal Co.* court noted, however, in matters relating to taxation the standards used to determine what are considered to be fixtures as between grantor and grantee, vendor and vendee, or mortgagor and mortgagee should apply, rather than the standards applied in landlord-tenant situations. The major difference between these doctrines is that annexations by a tenant are presumed to be for his benefit and not to enrich the freehold [citation], while annexations made by an owner, as in the present case, are presumed to be made with the intent to permanently improve the premises." *Cherry Bowl, Inc.*, 100 Ill. App. 3d at 330.

The court also cited language from its prior decision in *B. Kreisman & Co. v. First Arlington National Bank* (1980), 91 Ill. App. 3d 847, namely, that " 'it is the intent to permanently improve the real estate, not simply the intent to use the equipment in the business carried on in it ***' " which is relevant in determining whether an item of personal property has become a fixture." *Cherry Bowl, Inc.*, 100 Ill. App. 3d at 330, quoting *B. Kreisman & Co.*, 91 Ill. App. 3d at 852-53.

■ In *In re Application of Beeler* (1982), 106 Ill. App. 3d 667, the court reviewed a circuit court decision concerning the proper classification of portable grain dryers. Although the *Beeler* court ultimately upheld the classification of these portable facilities as personalty, it recognized both the intention test and the integrated industrial plant doctrine as to the proper classification of property under the Revenue Act:

"Though these cases [*Ayrshire, Cherry Bowl*] did not explicitly state what the proper test would be to determine whether property is real estate under section 1(13), two different approaches

were mentioned and formed the basis of the courts' reasoning: the intention test and the integrated industrial plant doctrine.

Under the intention test, three criteria are applied to evaluate whether property is personalty or realty, or more properly, whether an item has become a fixture. First, the property must be annexed to the realty or to something appurtenant thereto; second, the property must be applied to the use or purpose to which that part of the realty, with which it is connected, is appropriated; and finally, the party making the annexation must intend to make a permanent accession to the freehold. [Citations.]

\* \* \*

The second approach, useful in determining whether an item of property is realty or personalty, has been described as the 'integrated industrial doctrine.' Under this test, all machinery of a factory or plant necessary for its operation as a complete going concern, is considered to be part of the freehold." *Beeler*, 106 Ill. App. 3d at 669-70, 671.

The *Beeler* court described the integrated industrial plant doctrine thusly:

"The integrated industrial doctrine, though seemingly different from the above intention test, is just an extension of the second and third elements of the intention test requiring use in connection with the use to which the land is put, and an intent to permanently improve the real estate. Under the industrial doctrine, however, physical annexation is subordinated to the interrelationship between the disputed piece of property and the use of the real estate. The higher the degree of a relationship between the contested property and the uses of the realty, the more assuredly it can be said that the property is a part of the realty." *Beeler*, 106 Ill. App. 3d at 672.

In the appeal at bar, the PTAB, citing the Act as well as the above-cited decisions, ruled that the subject machinery at the Zion facility was real property and not subject to ad valorem taxation for the 1978 tax year. The PTAB specifically found:

"The evidence and testimony in the record clearly indicates [*sic*] that: first, the machinery and equipment are sufficiently affixed to the real estate; second, the machinery and equipment are applied to the use and purpose to which the real estate is devoted; to wit; the generating and transmitting of electricity; and finally, Edison intended to make the machinery and equipment a permanent accession to the property."

Plaintiff argues that *Ayrshire* was wrongly decided, taking, as it did, no account of *Shelbyville*'s "continuous, connected physical properties" doctrine. Plaintiff maintains that *Ayrshire* must be viewed as an attempt to overrule *Shelbyville*.

It is obvious that there is no longer any support for *Shelbyville*. Each of the above-cited cases ignores the case. At least one court has implied section 25 of the 1872 Revenue Act, upon which *Shelbyville* is based, is no longer the law of the land. (See *National Boulevard Bank v. Citizens Utilities Co.* (1982), 107 Ill. App. 3d 992.) While plaintiff argues that section 25 of the 1872 Act was never repealed, it does not direct this court's attention to said section's place in the present Act. Indeed, a detailed perusal of the Act does not reveal the language of the old section 25. Moreover, there is nothing in the Act "which specifies or requires that 'machinery and equipment' be considered to be personalty." *Central Illinois Light Co. v. Johnson* (1981), 84 Ill. 2d 275, 279.

We find the court below properly determined that, even though section 25 had been repealed, it continued to serve as model and standard for many of the State's assessors. Despite serving this function, section 25 did not have the force of law, and, thus, *Shelbyville* no longer controlled the 1978 assessment determinations as to the type of machinery involved herein.

Further, plaintiff's argument that *Ayrshire* and its progeny are contrary to our supreme court's decision in *Central Illinois Light Co. v. Johnson* (1981), 84 Ill. 2d 275, is not on point. *Cilco* deals with the transfer of machinery and equipment from the personal property rolls to the real property rolls in 1979. As such, it is clearly distinguishable from the instant case, where the subject machinery was, at all times, assessed as real property. Moreover, *Cilco* does not stand for repudiation of the "integrated industrial plant" doctrine, as plaintiff argues. Rather it serves to prohibit the reclassification of property after January 1, 1979.

Next, plaintiff contends that the Property Record Card Statutes (Ill. Rev. Stat. 1977, ch. 120, pars. 484b, 485), support its position. We agree with defendants' contention that said statutes do not alter the relevant definition of real property and have no actual bearing on the issue before us.

Next, plaintiff argues that the Zion assessor's classification of the subject machinery constitutes an unconstitutional tax on personal property in violation of article IX, section 5(c), of the Illinois Constitution (Ill. Const. 1970, art. IX, §5(c)), which requires the General Assembly to abolish all ad valorem personal property taxes on or before January 1, 1979. Having found that the subject machinery was properly determined to be real estate, we find this argument meritless. Moreover,

plaintiff's contention that, when the Constitution of 1970 was adopted by the electorate, the right not to be taxed on personal property became vested is simply not true. The Constitution of 1970 prohibits the levy, extension or collection of ad valorem personal property taxes for the calendar year of 1979 and thereafter. (*Client Follow-Up Co. v. Hynes* (1979), 75 Ill. 2d 208.) Section 5(c) of article IX does not retroactively prohibit the collection of personal property taxes for 1978; and 1978 personal property taxes payable in 1979 are collectable. (75 Ill. 2d at 228.) We find that it did not constitute an unconstitutional tax upon plaintiff.

 Next, plaintiff argues that the 1978 classification of the subject machinery as real property violated the Illinois Constitution's uniformity provision, which reads:

> "Except as otherwise provided in this Section, taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law." (Ill. Const. 1970, art. IX, §4(a).)

Specifically, plaintiff contends that the subject classification placed an unconstitutional, nonuniform tax on its property since similar property it owns elsewhere was classified as personal property.

Below, the PTAB held that plaintiff's uniformity argument was meritless, stating that "[t]he 'inequality' which [plaintiff] alludes to involves the variations in the exercise of judgment between the various local assessing officials who must necessarily act independently of one another, even though they all seek to apply the same standards." Moreover, the circuit court found that the uniformity provision does not require that the Zion taxing bodies be forced to accept plaintiff's arrangements with other assessors.

 In *Schreiber v. County of Cook* (1944), 388 Ill. 297, our supreme court wrote:

> "Absolute equality is impracticable in taxation and is not required by the equal protection clause of the constitution. Inequalities that result occasionally and incidentally in the application of a system that is not arbitrary in its classification, and not applied in a hostile and discriminatory manner, are not sufficient to defeat the tax. [Citations.] Mere inequities in the administration of the law violate no constitutional rights. [Citation.] A statute is not discriminatory when the same means and methods are employed alike to the persons or property composing the class so that the law operates on all similarly situated." *Schreiber*, 388 Ill. at 303.

 Plaintiff cites *Moniot v. Property Tax Appeal Board* (1973), 11 Ill. App. 3d 309. In *Moniot*, the court found a "deliberate and intentional policy of excluding intangible property of living persons from tax-

ation and that same deliberate and intentional policy required taxation of such intangible personal property belonging to estates." (*Moniot*, 11 Ill. App. 3d at 314.) As the law required identical assessment regardless of ownership, this deliberate policy constituted fraud which violated the uniformity provision. The instant case involves no such example of a fraudulent assessment; consequently, *Moniot* is not applicable here. Where, as here, an assessment is properly based upon the Revenue Act and the relevant case law, it does not violate the uniformity provision.

■■■ Finally, plaintiff argues that the PTAB erred in excluding its evidence of statewide practices of classifying process machinery as personal property. Plaintiff contends that the PTAB's reliance on *Cherry Bowl, Inc. v. Illinois Property Tax Appeal Board* (1981), 100 Ill. App. 3d 326, for this proposition was misplaced. We do not agree. In ruling upon the subject evidence, the PTAB stated:

> "The testimony of employees of utility companies located throughout the State of Illinois with respect to the personal property assessments of property owned by other companies in other counties is irrelevant and inadmissible in this proceeding. The testimony of the representatives of Edison with respect to the assessment of Edison's property not located in Lake County is also irrelevant and immaterial. Finally, the testimony of various officials and other officials involved in the assessment process and the promulgation of forms and other tools for the assessment of property is also ruled irrelevant and inadmissible. Insofar as Edison has sought to introduce physical records of the laws of the State of Illinois as well as from and other documents kept in the usual course of business of agencies of this State, the Board also rules these inadmissible as physical evidence ***. In support of its rulings as to the admissibility of assessment practices in counties other than Lake, the Board relies on the *Cherry Bowl* case cited by Zion."

In *Cherry Bowl*, the taxpayer sought to introduce a witness' testimony of telephone conversations with various assessors. The PTAB had excluded the evidence, finding it both irrelevant and hearsay. This court upheld that exclusionary ruling, explaining that the practices of other assessors bore no relevance to the propriety of the 1978 tax assessment at issue.

Finding that the objections were properly sustained, the *Cherry Bowl* court stated:

> "The interpretation given to the scope of section 1(13) of the Revenue Act [citation] by a few of the many assessors applying it to bowling establishments throughout the State was not relevant to

whether the Rockford township assessor had correctly done so in the present case. Nor would evidence of the varied approaches taken by them assist the PTAB in its resolution of the question before it. The offered testimony and documents were clearly hearsay, in any event, and on objection the PTAB properly declined to consider them." *Cherry Bowl,* 100 Ill. App. 3d at 331.

Similarly, other power plant assessments would be of little relevance here. The PTAB did not require such evidence to determine the propriety of the subject assessment. Moreover, as in *Cherry Bowl,* the offered testimony and documentation was clearly inadmissible hearsay. The PTAB properly denied the admission of this disputed evidence.

For reasons cited above, we find that the subject machinery was properly assessed as real property for 1978.

Having so found, we further hold that the PTAB's decision that the subject machinery was real property was not against the manifest weight of the evidence. As stated above, there is no question the power generating equipment was intended to remain permanently within the Zion station's structure. As such, it was properly found to be permanently affixed to the property and, as a result, eligible to be assessed as real property.

■■ Plaintiff next argues that Zion assessor's 1979 through 1983 classification of the subject equipment as real property was error. We find this contention meritless as it essentially reargues the issue decided above.

We note that the PTAB did not hold an evidentiary hearing with respect to the 1979 through 1983 tax years separate from that held with respect to the 1978 tax year. With regard to the 1979 through 1983 tax years, the PTAB concluded:

"After considering the evidence and reviewing the record, the Property Tax Appeal Board finds that it has jurisdiction over the parties and the subject matter of this appeal. The Board rules that the machinery and equipment are real property and thus subject to ad valorem taxation in the 1979 [through 1983] assessment year[s]. The evidence and testimony in the record from the hearing of the 1978 appeal clearly indicates [*sic*] that: first, the machinery and equipment are sufficiently affixed to the real estate; second, the machinery and equipment are applied to the use and purpose to which the real estate is devoted; to wit: the generating and transmitting of electricity; and finally, Edison intended to make the machinery and equipment a permanent accession to the property. Therefore, the Property Tax Appeal Board finds

that the assessment as established by the board of review is correct."

The trial court held a hearing to review the decision for the 1978 tax year and, with the consent of the parties, ruled on the 1979 through 1983 tax years based on its decision for the 1978 tax year. As noted above, the court below concluded that the PTAB's decision in the 1978 case classifying the permanently affixed machinery and equipment as real property was consistent with the manifest weight of the evidence and applicable statutory and case law.

As mandated by the Constitution of 1970 (Ill. Const. 1970, art. IX, §5(c)), the General Assembly enacted the Illinois Replacement Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 499.1) to replace the revenues lost by the abolition of the personal property tax. Section 18.1 of that act included the following provisions:

"No property lawfully assessed and taxed as personal property under this Act prior to January 1, 1979, shall be classified as real property subject to assessment and taxation under this Act after January 1, 1979. *No property lawfully assessed and taxed as real property under this Act prior to January 1, 1979, shall be classified as personal property subject to assessment and taxation under this Act after January 1, 1979.*" (Emphasis added.) Ill. Rev. Stat. 1979, ch. 120, par. 499.1.

In *Central Illinois Light Co. v. Johnson* (1981), 84 Ill. 2d 275, our supreme court quoted the following passage of legislative proceedings wherein Senator Adeline Geo-Karis asked the question whether section 18.1 would restrict county assessors as to the classification of property as real or personal. Senator Terry Bruce stated in response:

" 'Yes, it has, Senator Geo-Karis ***. [C]oncern was expressed by many in the House and an amendment was added which clarifies *** that property that was legally classified in prior years cannot be reclassified, and frankly that works both ways. Some assessors would give utilities a break if it were assessed as real property as opposed to personal property, some would give the break if it were personal rather than real. And now some utility companies seeing that they would not have to pay any taxes if they could get it reclassified quickly to personal property and not as real property, wouldn't pay. The decision was made that the best thing is to freeze everybody with the deals that they've made with their local assessor. If they went to them and said, look, let's assess this as personal property so I can get a lower rate, that's fine, they're stuck with that and now they're off the rolls. If they went through in the other way and said, let's clas-

sify it as real estate and they enjoyed that advantage for several years at a lower rate than the personal property tax rate, I don't think it would be fair now to allow them to change that. So the bill just says, if it were legally classified prior to the enactment of this bill, it cannot be reclassified.' " (84 Ill. 2d at 282.)

The *Central Illinois Light Co.* court concluded that the legislature intended through section 18.1 to freeze classification of properties that had resulted from legally sufficient deals between assessors and property owners. Moreover, the *Central Illinois Light Co.* court reaffirmed our supreme court's long-standing position that taxation of property is a legislative and not a judicial function and that the courts will not review property assessments unless said assessments are fraudulent or constructively fraudulent. 84 Ill. 2d at 282-83.

As we held in the previous issue, the 1978 assessment was legally grounded. Under *Central Illinois Light Co.*, we find that this proper assessment was frozen for the 1979 assessment year and for the subject assessment years which followed.

We have considered all other arguments raised by plaintiff and consider them meritless.

For reasons stated above, we affirm the judgment of the circuit court.

Affirmed.

NICKELS and BOWMAN, JJ., concur.