674 N.E.2d 129 (1996)
285 Ill. App.3d 170
220 Ill.Dec. 858
OREGON COMMUNITY UNIT SCHOOL DISTRICT NO. 220, et al., Intervenors-Petitioners-Appellants,
v.
The PROPERTY TAX APPEAL BOARD, Respondents-Appellees.
No. 2-96-0105.
Appellate Court of Illinois, Second District.
December 5, 1996.
*131 Sonnenschein, Nath & Rosenthal, Frederic S. Lane, Harold C. Hirshman, Robert B. Millner, David E. Lieberman, Kirk M. Minckler, Sonnenschein, Nath & Rosenthal, Chicago, Stuart L. Whitt, Donna K. Metzler, Law Offices of Stuart L. Whitt, Aurora, for Byron Community Unit School Dist. 226, Byron Fire Protection Dist., Byron Forest Preserve Dist, Byron Museum Dist., Byron Public Library Dist., County of Ogle, Oregon Community Unit School Dist. 220, Oregon Park District, Rock Valley College Dist. 511, Rockvale Township.
James E. Ryan, Attorney General, Karen J. Dimond, Assistant Attorney General, Barbara A. Preiner, Solicitor General, John P. Schmidt, Assistant Attorney General, Chicago, for Property Tax Appeal Board.
Terry F. Moritz, Michael D. Karpeles, Frederick H. Cohen, Lisa M. Young, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Chicago, Thomas M. Atherton, Dutton, Overman, Goldstein & Pinkus, Indianapolis, IN, for Commonwealth Edison Co.
Douglas P. Floski, Ogle County State's Attorney, Oregon, for Ogle County Board Of Review.
Presiding Justice McLAREN delivered the opinion of the court:
This case is an appeal from a Property Tax Appeal Board (PTAB) decision assessing the respondent's, Commonwealth Edison Company's, machinery and equipment as personal property. The PTAB consolidated the appeals of the assessments for 1989, 1990, 1991, and 1992 and reversed the Ogle County Board of Review's holding that the respondent's equipment was properly assessed as real property. Because the respondent sought a reduction of more than $300,000 in the assessed value of its property, we take this direct review of the PTAB's decision (35 ILCS 200/16-195 (West 1994)) and affirm.
The subject matter of this appeal is the assessments of a nuclear power plant, located in Rockvale Township, Ogle County, Illinois, commonly referred to as Byron Station (Byron), for ad valorem real property tax purposes for the years 1989 through 1992. The appellants are Oregon Community Unit School District No. 220, Byron Community Unit School District No. 226, Rock Valley College District No. 511, Byron Fire Protection District, Oregon Park District, Byron Forest Preserve District, Byron Museum District, Byron Public Library District, Rockvale Township, and the County of Ogle, Illinois (petitioners). The appellees are the PTAB, Commonwealth Edison Company (Edison), and the Ogle County Board of Review (Board) (collectively, the respondents).
For the years in question, the Board determined that the parcels of land containing the Byron Nuclear Power Plant had an assessed value of:

1989 $545,775,470
1990 516,578,120
1991 1,070,820,160
1992 1,054,223,370

Edison appealed these assessments to the PTAB. The PTAB consolidated the appeals. The petitioners intervened in the appeal. The PTAB hearing began on May 18, 1995, and ended on July 26, 1995.

THE PTAB's FINDINGS
The PTAB determined that, under section 24-5 of the Property Tax Code (35 ILCS 200/24-5 (West 1994)), the machinery and *132 equipment at the Byron site should be classified as personal property. The PTAB found: (1) prior to January 1, 1979, Ogle County classified land, building structures, lot improvements, and building-related property as real property; (2) prior to January 1, 1979, Ogle County classified manufacturing process machinery and equipment as personal property; (3) prior to January 1, 1979, Robert Troop, Ogle County supervisor of assessments from 1973 through 1984, classified the machinery and equipment at Byron as personal property with the exception of the steam generators; (4) Troop's classification of the steam generators as real property violated Ogle County's uniform classification policy; (5) the machinery and equipment at Byron are similar and of like kind to that found at other Ogle County industries classified as personal property; (6) the process/building-related classification scheme was applied to every Ogle County taxpayer with the exception of Edison after 1979; (7) James Harrison, the Ogle County supervisor of assessments in 1991, and the Board erroneously reclassified the Byron property in 1991 because of an assistant State's Attorney's erroneous interpretation of Commonwealth Edison Co. v. Property Tax Appeal Board, 219 Ill.App.3d 550, 162 Ill.Dec. 268, 579 N.E.2d 1082 (1991) (hereinafter Zion); (8) after subtracting the value of land not at issue, Real Estate Analysis Corporation's (REAC) appraisals are best evidence of the value of the real property at Byron; and (9) the appraised value of the real property at Byron and its assessed value are as follows:

APPRAISED VALUE YEAR MEDIAN LEVELS ASSESSED VALUE
$1,148,512,252 1989 32.21% $369,935,795
1,138,053,989 1990 31.87 362,697,803
1,056,055,537 1991 33.01 348,603,993
 958,055,532 1992 33.20 318,074,438

In essence, the petitioners argue that Edison's power generating machinery and equipment should be classified, assessed, and taxed as real property. According to the petitioners, the major items in dispute are the Nuclear Steam Supply System (NSSS) (with the exception of the reactor vessels), piping and electrical equipment, including power and control cables, and cable pans. The petitioners assert that the PTAB erroneously: (1) reclassified the property in violation of the "Freeze Act" (35 ILCS 200/24-5 (West 1994)); (2) applied the like-kind test; (3) classified the respondent's property as personal property; and (4) adopted the respondent's classification test.
The standard of review for a PTAB decision is governed by the Administrative Review Law. 735 ILCS 5/3-101 et seq. (West 1994); Boone County Board of Review v. Property Tax Appeal Board, 276 Ill. App.3d 989, 993-94, 213 Ill.Dec. 442, 659 N.E.2d 72 (1995). Section 3-110 of the Administrative Review Law provides "[t]he findings and conclusions of the administrative agency on questions of fact shall be held prima facie true and correct." 735 ILCS 5/3-110 (West 1994).
Thus, when reviewing the administrative agency's findings of fact, we may not reweigh the evidence or make an independent determination of the facts. Abrahamson v. Illinois Department of Professional Regulation, 153 Ill.2d 76, 88, 180 Ill.Dec. 34, 606 N.E.2d 1111 (1992); Boone County, 276 Ill.App.3d at 994, 213 Ill.Dec. 442, 659 N.E.2d 72. Accordingly, we will not disturb an agency's findings of fact unless they are against the manifest weight of the evidence. Abrahamson, 153 Ill.2d at 88, 180 Ill.Dec. 34, 606 N.E.2d 1111; Boone County, 276 Ill.App.3d at 994, 213 Ill.Dec. 442, 659 N.E.2d 72.
A finding is not against the manifest weight of the evidence unless the opposite conclusion is clearly evident. Abrahamson, 153 Ill.2d at 88, 180 Ill.Dec. 34, 606 N.E.2d 1111; Boone County, 276 Ill.App.3d at 994, 213 Ill.Dec. 442, 659 N.E.2d 72. Thus, we will not disturb an agency's finding of fact merely because an opposite conclusion is reasonable or because we may have found differently. Abrahamson, 153 Ill.2d at 88, 180 Ill.Dec. 34, 606 N.E.2d 1111; Boone County, 276 Ill.App.3d at 994, 213 Ill.Dec. 442, 659 N.E.2d 72. In addition, weighing of evidence *133 and determining the credibility of the witnesses are the jobs of the PTAB and are uniquely within its province. La Salle Partners, Inc. v. Illinois Property Tax Appeal Board, 269 Ill.App.3d 621, 632, 207 Ill.Dec. 101, 646 N.E.2d 935 (1995). If the PTAB's findings of fact are reasonable, it does not matter if we might have reached a different result had we been the trier of fact. Abrahamson, 153 Ill.2d at 88, 180 Ill.Dec. 34, 606 N.E.2d 1111. Accordingly, if the record contains evidence to support an agency's finding of fact, it will not be disturbed. Abrahamson, 153 Ill.2d at 88-89, 180 Ill.Dec. 34, 606 N.E.2d 1111; Boone County, 276 Ill.App.3d at 994, 213 Ill.Dec. 442, 659 N.E.2d 72.
Conversely, an administrative agency's determinations of law are not accorded the same deference as its findings of fact. Perto v. Board of Review, 274 Ill.App.3d 485, 490, 210 Ill.Dec. 933, 654 N.E.2d 232 (1995). It is well settled that an agency's finding on a question of law, such as the interpretation of a statute, is not binding on this court. Wyndemere Retirement Community v. Department of Revenue, 274 Ill.App.3d 455, 459, 211 Ill.Dec. 146, 654 N.E.2d 608 (1995). Thus, we must review questions of law de novo. Illini Country Club v. State Property Tax Appeal Board, 263 Ill.App.3d 410, 416-17, 200 Ill.Dec. 764, 635 N.E.2d 1347 (1994). However, we must give substantial weight and deference to statutory interpretations made by an administrative agency charged with administration of a particular statute. Abrahamson, 153 Ill.2d at 97-98, 180 Ill.Dec. 34, 606 N.E.2d 1111. Our supreme court explained, "[a] significant reason for this deference is that agencies can make informed judgments upon the issues, based upon their experience and expertise." Abrahamson, 153 Ill.2d at 98, 180 Ill.Dec. 34, 606 N.E.2d 1111.
Therefore, when we are presented with a mixed question of law and fact, we must first determine whether the findings of fact are against the manifest weight of the evidence. Abrahamson, 153 Ill.2d at 88, 180 Ill.Dec. 34, 606 N.E.2d 1111; Boone County, 276 Ill.App.3d at 994, 213 Ill.Dec. 442, 659 N.E.2d 72. After that analysis is complete, we must engage in our own independent analysis in applying those facts to the questions of law. Boone County, 276 Ill.App.3d at 994, 213 Ill.Dec. 442, 659 N.E.2d 72.
The Illinois Constitution of 1970 abolished the ad valorem personal property tax, effective January 1, 1979. Ill. Const.1970, art. IX, § 5(c). To prevent the reclassification of personal property as real property, the General Assembly enacted section 499.1 of the Property Tax Code (Freeze Act) (Ill. Rev.Stat.1979, ch. 120, par. 499.1 (now 35 ILCS 200/24-5 (West 1994))). The Freeze Act "freezes" the classification of real and personal property made by assessing officials prior to January 1, 1979. 35 ILCS 200/24-5 (West 1994). In 1982, the legislature amended the Freeze Act to prohibit the reclassification of property of like kind acquired or placed in use after January 1, 1979. The Freeze Act now provides:
"No property lawfully assessed and taxed as personal property prior to January 1, 1979, or property of like kind acquired or placed in use after January 1, 1979, shall be classified as real property subject to assessment and taxation. No property lawfully assessed and taxed as real property prior to January 1, 1979, or property of like kind acquired or placed in use after January 1, 1979, shall be classified as personal property." 35 ILCS 200/24-5 (West 1994).
Thus, the classification of property as either real or personal prior to January 1, 1979, controls the status of property after January 1, 1979. Central Illinois Light Co. v. Johnson, 84 Ill.2d 275, 49 Ill.Dec. 676, 418 N.E.2d 696 (1981) (CILCO).
The taxpayer has the burden of showing that property must be classified as personal property under the Freeze Act. Trahraeg Holding Corp. v. Property Tax Appeal Board, 204 Ill.App.3d 41, 43, 149 Ill.Dec. 602, 561 N.E.2d 1298 (1990). However, if the taxpayer meets this burden, the property must be classified as personal property without resort to any other method of classification. Trahraeg Holding Corp., 204 Ill. App.3d at 43, 149 Ill.Dec. 602, 561 N.E.2d 1298.
*134 We first discuss whether the PTAB's findings of fact regarding the pre-1979 classification of the Byron property are against the manifest weight of the evidence. The PTAB found that, prior to January 1, 1979, Ogle County classified land, building structures, lot improvements, and building-related property as real property, and manufacturing process machinery and equipment as personal property. After reviewing the record, we find sufficient evidence to support these findings.
Troop, the supervisor of assessments from 1973 through 1984, testified that during his tenure land, building structures, and lot improvements were classified as real property, while manufacturing process machinery and equipment were classified as personal property. Troop's testimony was corroborated by Blanford Pierce, an Ogle County township assessor since 1978, and Margaret Fridley, the present chairman of the Ogle County Board of Review. Because the PTAB's finding is supported by the record and the opposite conclusion is not clearly evident, we determine that this finding is not against the manifest weight of the evidence. Thus, there is evidence in the record to support the PTAB's finding that Troop classified all process-related equipment and machinery as personal property in 1978, with the exception of the steam generator. Accordingly, we determine that the PTAB's finding that Troop classified process-related machinery and electrical equipment as personal property, along with all other process-related items, notwithstanding the steam generator, is not against the manifest weight of the evidence.
Regarding the NSSS, Troop testified that, in 1978, the NSSS on site at Byron consisted largely of the reactor vessels and the steam generators. Troop's testimony regarding the NSSS was corroborated by a letter sent to Troop in May 1978 by John McHugh, Edison's supervisor of state and local taxes. The PTAB classified the reactor vessels as real property, thus, they are not at issue in this appeal. However, the PTAB found that Troop improperly classified the steam generators as real property. The PTAB then reclassified the steam generators as personal property. The petitioners argue that the alleged reclassification violates the Freeze Act.
The record supports the PTAB's finding that Troop improperly classified the steam generators as real property. Troop testified that, during his tenure as supervisor of assessments from 1973 through 1984, he classified process-related machinery as personal property and building-related property as real property. Troop stated that his classification of the steam generators was not consistent with Ogle County's method of classification. He explained that he classified the steam generators as real property because he could not positively identify them as process-related or building-related and intended to investigate later. Troop also stated that he did not believe the plant could be classified as personal or real property for another seven or eight years. However, Troop testified that he was concerned about the potential reaction of a local school board if he did not assess these items as real property. Thus, the opposite conclusion is not clearly evident. Accordingly, the PTAB's finding that Troop improperly classified the steam generators as real property in 1978 is not against the manifest weight of the evidence.
However, this finding does not conclusively determine that the PTAB properly reclassified the steam generators as personal property. We must determine whether such a finding resulting in a reclassification violates the Freeze Act. As stated, the Freeze Act freezes the classification of property as either real or personal, prior to January 1, 1979. 35 ILCS 200/24-5 (West 1994). However, the Freeze Act also provides that the classification is frozen only if it was lawfully made. 35 ILCS 200/24-5 (West 1994). It is well established that it is unlawful for an assessor to exempt one kind of property while classifying the same kind of property in the same district as nonexempt. See Kankakee County Board of Review v. Property Tax Appeal Board, 131 Ill.2d 1, 20, 136 Ill. Dec. 76, 544 N.E.2d 762 (1989).
Article IX, section 4(a), of the Illinois Constitution of 1970 provides:
"Except as otherwise provided in this Section, taxes upon real property shall be *135 levied uniformly by valuation ascertained as the General Assembly shall provide by law."
Our supreme court explained:
"The principle of uniformity of taxation requires equality in the burden of taxation. [Citation.] This court has held that an equal tax burden cannot exist without uniformity in both the basis of assessment and in the rate of taxation. [Citation.] The uniformity requirement prohibits taxing officials from valuating one kind of property within a taxing district at a certain proportion of its true value while valuating the same kind of property in the same district at a substantially lesser or greater proportion of its true value." Kankakee, 131 Ill.2d at 20, 136 Ill.Dec. 76, 544 N.E.2d 762.
Thus, an assessment of taxes on property is not lawful if it creates a "substantial disparity between similar properties or classes of tax payers." Moniot v. Property Tax Appeal Board, 11 Ill.App.3d 309, 314, 296 N.E.2d 354 (1973).
In this case, Troop, the 1978 assessor, testified that his assessment of the steam generators at Byron as real property was not consistent with Ogle County's uniform practice. In addition, Troop's testimony was supported by the testimony of Pierce and Fridley. Because Troop's 1978 classification of the steam generators was not uniformly made, we determine that it was not lawful and is not frozen as real property. Accordingly, the PTAB's lawful reclassification of the steam generators as personal property was not violative of the Freeze Act.
Further, to the extent that the petitioners argue that Troop classified other process-related machinery and equipment as real property in 1978, such classification was not lawful and, therefore, not frozen. 35 ILCS 200/24-5 (West 1994). Accordingly, the petitioners' arguments that other process-related machinery and equipment were present at Byron in 1978 and were classified by Troop as real property lacks merit.
The petitioners argue that, absent fraud, pre-1979 classifications are frozen. The petitioners cite CILCO, 84 Ill.2d 275, 49 Ill.Dec. 676, 418 N.E.2d 696, to support this argument. We find CILCO factually distinct from the instant case. In CILCO a county supervisor entered into an agreement with a privately owned utility company prior to January 1, 1979. The agreement provided that the property would be assessed as 40% real property and 60% personal property. After reviewing the legislative history of the Freeze Act, our supreme court held that the classification contained in the pre-1979 agreement was frozen. Our supreme court noted that the legislative history revealed that the purpose of the Act was to freeze agreements made before 1979. The court reasoned that, since courts do not traditionally review the propriety of assessments in the absence of fraud and there was no allegation of fraud, the classification contained in the agreement was frozen.
CILCO is distinguishable from the case at bar. The parties in the instant case did not agree prior to 1979 that the steam generators would be classified as real property. Further, the extension of the CILCO holding to the instant case ignores the plain and unambiguous language of the Freeze Act, which we are not permitted to ignore. Walker v. Rogers, 272 Ill.App.3d 86, 90, 208 Ill.Dec. 815, 650 N.E.2d 272 (1995) (a court must give effect to the clear and unambiguous language of a statute). Nothing in CILCO indicates that the word "lawfully" is limited to fraudulent assessments. In addition, the petitioners' interpretation ignores the constitutional mandate requiring uniformity of taxation (Ill. Const.1970, art. IX, § 4(a)) and our duty to interpret statutes consistent with the constitution. People v. Orth, 124 Ill.2d 326, 334, 125 Ill.Dec. 182, 530 N.E.2d 210 (1988); Mulligan v. Joliet Regional Port District, 123 Ill.2d 303, 312, 123 Ill.Dec. 489, 527 N.E.2d 1264 (1988). The PTAB correctly found that Troop's 1978 classification of the steam generators as real property is not frozen. Further, because other steam generators in Ogle County were classified as personal property, the PTAB properly determined that the steam generators were personalty and exempt from real property taxation.
*136 The petitioners also claim that the respondents must be estopped from now arguing that the 1978 classification was unlawful. The petitioners state that Edison did not argue this point below and now improperly attempts to attack collaterally the 1978 assessment. However, the petitioners fail to understand that our task here is to review the PTAB's findings. Based on the evidence presented, the PTAB found that Troop's 1978 classification of the steam generators was unlawful. Thus, unlike People ex rel. Bosworth v. Lowen, 115 Ill.App.3d 855, 71 Ill.Dec. 554, 451 N.E.2d 269 (1983), there is a factual basis for our consideration of this issue. Therefore, we may properly review this finding.
Further, the respondents' claim that Troop's 1978 assessment was unlawful is not a collateral attack. Edison is not seeking legal redress, that is, a refund for the payment of its 1978 taxes. Instead, Edison attacks the assessment of the 1989 through 1992 taxes which, because of the Freeze Act, requires an analysis of Troop's 1978 assessment. Further, Troop's 1978 assessment has never been previously judicially determined. Thus, there is nothing collateral to attack. In this context, Edison's claim that the 1978 assessment was not lawful is not a collateral attack. See In re Estate of Wallen, 262 Ill.App.3d 61, 70, 199 Ill.Dec. 359, 633 N.E.2d 1350 (1994). The petitioners' argument fails.
Next, the petitioners argue that the PTAB erroneously held that the Freeze Act bars taxation of the process machinery and equipment installed at the Byron site after January 1, 1979. The PTAB's like kind analysis focused on Ogle County's classification policy prior to January 1, 1979. The PTAB found that the property in question was similar and of like kind to that found at other Ogle County industries classified as personal property before 1979. Thus, the PTAB concluded that the machinery and equipment installed at Byron after January 1, 1979, are frozen as personal property and are, thus, exempt from real property taxation.
The petitioners challenge the PTAB's application of the Freeze Act's like-kind provision. They claim that the PTAB should have compared the post-1978 machinery and equipment to machinery and equipment installed at Byron prior to January 1, 1979. The petitioners claim that the post-1979 machinery and equipment is of like-kind only if it is substantially similar in nature and function to pre-1979 machinery and equipment. Conversely, the respondents contend that the PTAB's interpretation of the like-kind provision is supported by legislative history, the language of the Freeze Act, and the uniformity clause of the Illinois Constitution. We agree with respondents.
We recognize that we are not bound by an agency's erroneous or unreasonable interpretation of a statute. Boaden v. Department of Law Enforcement, 171 Ill.2d 230, 239, 215 Ill.Dec. 664, 664 N.E.2d 61 (1996); County of Whiteside v. Property Tax Appeal Board, 276 Ill.App.3d 182, 186, 213 Ill.Dec. 11, 658 N.E.2d 481 (1995). However, it is well settled that when an agency is charged with the administration of an ambiguous statute, its interpretation of the statute is generally entitled to deference. Boaden, 171 Ill.2d at 239, 215 Ill.Dec. 664, 664 N.E.2d 61; Whiteside, 276 Ill.App.3d at 186, 213 Ill.Dec. 11, 658 N.E.2d 481. An agency's interpretation expresses an informed source for ascertaining legislative intent and deserves great weight. Whiteside, 276 Ill.App.3d at 186, 213 Ill.Dec. 11, 658 N.E.2d 481.
After reviewing the language of the Freeze Act, its legislative history, and the uniformity clause of the Illinois Constitution of 1970, we determine that the PTAB's interpretation of the like-kind provision is reasonable. The Freeze Act provides:
"No property lawfully assessed and taxed as personal property prior to January 1, 1979, or property of like kind acquired or placed in use after January 1, 1979, shall be classified as real property subject to assessment and taxation." 35 ILCS 200/24-5 (West 1994).
The statute contains no language indicating that the comparison is limited to personal property located at only one plant. On the contrary, it uses the term "like kind" without a limitation regarding location. Black's Law Dictionary defines "like" as "having the same, or nearly the same, appearance, qualities, *137 or, characteristics [citation]; * * * similar, [citation]; or substantially similar [citation]." Black's Law Dictionary 925 (6th ed. 1990). "Kind" is defined as "[c]lass, grade, or sort." Black's Law Dictionary 870 (6th ed. 1990). Nothing in the common meaning of like kind indicates that the properties to be compared must be situated at the same location.
Further, the legislative history of the Freeze Act indicates that the purpose of the like-kind provision was to continue the assessment practices of assessors in their respective counties. Representative Ewing agreed with Representative Getty's statement that the like-kind provision "is designed to continue the practice of assessors existing prior to January 1, 1979 as to new property coming into their jurisdiction." 82d Ill.Gen.Assem, House Debates, April 21, 1982, at 113, cited in Diamond-Star Motors, Nos. 88-2525-I-3, 89-4200-I-3 (PTAB, December 22, 1992). This intent is echoed by the Senate Debates, wherein Senator Joyce explained that the like-kind provision "freeze[s] county by county assessment practices." 82d Ill.Gen.Assem., Senate Proceedings, June 25, 1982, at 82 (statement of Senator Joyce).
In addition, the PTAB's interpretation in the instant case is supported by the PTAB's decision in Diamond-Star Motors, Nos. 88-2525-I-3, 89-4200-I-3 (PTAB, December 22, 1992). While an agency's interpretation of a statute is not binding (Wyndemere Retirement Community, 274 Ill.App.3d at 459, 211 Ill.Dec. 146, 654 N.E.2d 608), it is persuasive (Abrahamson, 153 Ill.2d at 97-98, 180 Ill.Dec. 34, 606 N.E.2d 1111). In Diamond-Star Motors, Nos. 88-2525-I-3, 89-4200-I-3 (PTAB, December 22, 1992), the PTAB held that certain items of machinery and equipment at an automotive plant built after 1978 had to be classified as personal property under the Freeze Act because McLean County classified such items as personal property prior to 1979. Diamond-Star Motors, Nos. 88-2525-I-3, 89-4200-I-3, at 39-40 (PTAB, December 22, 1992).
The PTAB's interpretation of the Freeze Act is also supported by the uniformity clause of the Illinois Constitution of 1970 (Ill. Const.1970, art. IX, § 4(a)). The uniformity clause requires that taxing officials within each taxing district value similar property or similar classes of property in the same manner. Kankakee, 131 Ill.2d at 20, 136 Ill.Dec. 76, 544 N.E.2d 762; Moniot, 11 Ill.App.3d at 314, 296 N.E.2d 354. If the PTAB were to employ the petitioners' interpretation of the Freeze Act, property owned by businesses in the same county would be assessed differently. For example, a new business' property may be taxed as real property, while similar property owned by a pre-1979 business, but acquired after 1979, is classified as exempt personal property. The PTAB's interpretation avoids this unconstitutional result.
Under the PTAB's interpretation of the Freeze Act, when a county's pre-1979 method of classifying property as real or personal can be ascertained, that practice must be applied to property acquired in the same county after January 1, 1979. Thus, newly acquired property that would have been classified as personalty using the pre-1979 method is of like kind and, thus, frozen as personal property. Because the PTAB's interpretation of the Freeze Act is supported by the language of the Act and the legislative history and helps assure uniformity in taxation, we determine that the PTAB's interpretation is reasonable. Accordingly, the PTAB properly interpreted and applied the Freeze Act.
The petitioners cite Whiteside, 276 Ill.App.3d 182, 213 Ill.Dec. 11, 658 N.E.2d 481, to support their interpretation of the Freeze Act. In Whiteside, the PTAB determined that certain items of equipment at a plant were of like kind to items that previously had been used at the plant and had been taxed as personal property before 1979. Whiteside, 276 Ill.App.3d at 185, 213 Ill.Dec. 11, 658 N.E.2d 481. In making its determination, the PTAB relied on the following factors:
"(1) [P]erformance of the same function; (2) production of the same product; (3) similar portability and manner of attachment; and (4) that the new equipment replaced existing machinery." Whiteside, 276 Ill.App.3d at 186, 213 Ill.Dec. 11, 658 N.E.2d 481.
*138 The Appellate Court, Third District, upheld the PTAB's determination. Whiteside, 276 Ill.App.3d at 189, 213 Ill.Dec. 11, 658 N.E.2d 481.
Nevertheless, we do not believe the method used by the PTAB in Whiteside is the exclusive method for determining whether the Freeze Act applies to post-1978 property. The Whiteside court merely stated that "[w]e believe that those factors are sufficient to establish a like-kind relationship." (Emphasis added.) Whiteside, 276 Ill.App.3d at 186, 213 Ill.Dec. 11, 658 N.E.2d 481. In addition, the court stated that it was not unreasonable for the PTAB to find that "one purpose of the like-kind provision was to encourage businesses to modernize without incurring additional tax liability." (Emphasis added.) Whiteside, 276 Ill.App.3d at 186, 213 Ill.Dec. 11, 658 N.E.2d 481. Therefore, while approving the PTAB's method, the Whiteside court did not hold that it is the only method for determining whether property was of like kind.
Further, the facts in Whiteside and the case at bar are factually distinct. Unlike the case at bar, the taxpayer in Whiteside presented no evidence of the county's assessment practices before 1979. Instead, the taxpayer presented evidence of the county's treatment of its pre-1979 property. Therefore, the PTAB's analysis of the taxpayer's post-1978 property under Ogle County's pre-1979 assessment method is neither antithetical to nor precluded by the Whiteside decision.
We also find the petitioners' cite to CILCO, 84 Ill.2d 275, 49 Ill.Dec. 676, 418 N.E.2d 696, unpersuasive. The petitioners argue that CILCO stands for the proposition that the pre-1979 classification is frozen regardless of the method used to classify the property. CILCO, 84 Ill.2d at 280-83, 49 Ill.Dec. 676, 418 N.E.2d 696. However, the petitioners' interpretation of CILCO ignores the plain language of the Freeze Act (35 ILCS 200/24-5 (West 1994)) and the uniformity clause of the constitution (Ill. Const. 1970, art. IX, § 4(a)). The Freeze Act provides that classifications are frozen if the property was "lawfully assessed" (emphasis added) before 1979. 35 ILCS 200/24-5 (West 1994). The uniformity clause of the constitution prohibits a taxing official to value one property in one manner and then value the same kind of property, in the same district, in another manner. Ill. Const.1970, art. IX, § 4(a); Kankakee, 131 Ill.2d at 20, 136 Ill.Dec. 76, 544 N.E.2d 762.
In addition, unlike the case at bar, the question of the classification of property acquired after January 1, 1979, was not presented to the CILCO court. Thus, CILCO does not discuss the proper treatment of such property but defers the question "for another day." CILCO, 84 Ill.2d at 281, 49 Ill.Dec. 676, 418 N.E.2d 696. Accordingly, the PTAB's interpretation of the Freeze Act in the instant case does not conflict with our supreme court's decision in CILCO. 84 Ill.2d 275, 49 Ill.Dec. 676, 418 N.E.2d 696.
In addition, the petitioners assert that the PTAB's interpretation of the Freeze Act results in the application of an unlawful classification method. It asserts that the correct test is the intention test. Further, the petitioners claim that permanently affixed machinery and equipment has long been classified as real property in Illinois. The petitioners cite Zion, 219 Ill.App.3d 550, 162 Ill.Dec. 268, 579 N.E.2d 1082, Cherry Bowl, Inc. v. Illinois Property Tax Appeal Board, 100 Ill.App.3d 326, 55 Ill.Dec. 472, 426 N.E.2d 618 (1981), and Ayrshire Coal Co. v. Property Tax Appeal Board, 19 Ill.App.3d 41, 310 N.E.2d 667 (1974), to support these arguments. We find the cases cited by the petitioners unpersuasive.
Before discussing Zion, we note that, in 1991, an assistant State's Attorney opined that the Zion decision mandated that Byron's power generating equipment and machinery must be classified as real property. In reliance on that opinion, Harrison, Ogle County's supervisor of assessments in 1991, reclassified Byron's power generating machinery and equipment as real property. The PTAB determined that the assistant State's Attorney's opinion is erroneous. The respondents argue that the PTAB's finding is proper. We agree with the respondents.
In Zion, Edison contested the 1979 assessment and classification of its power generating *139 equipment at its Zion nuclear power plant located in Lake County. In 1978, the Lake County assessor classified the power generating equipment as real property. The PTAB applied the integrated plant doctrine, an extension of the intention test, and determined that the power generating equipment at Zion was properly classified as real property in 1978. Edison presented no evidence that the Lake County assessor used any other method than the integrated plant doctrine. This court concluded that the 1978 classification of the equipment was proper. Zion, 219 Ill.App.3d at 562, 162 Ill.Dec. 268, 579 N.E.2d 1082. Thus, this court concluded that the 1978 assessment was frozen "for the 1979 assessment year and for the [following] years." Zion, 219 Ill.App.3d at 564, 162 Ill.Dec. 268, 579 N.E.2d 1082.
Edison, in the case at bar, presented ample evidence that Ogle County, unlike Lake County in the Zion decision, used the process/building-related method of classifying property in 1978. Moreover, the legislative history supports the PTAB's interpretation of the Freeze Act that classification methods must be applied uniformly within counties, rather than between counties. See 82d Ill.Gen.Assem., Senate Proceedings, June 25, 1982, at 82 (statement of Senator Joyce) (explaining that the like-kind provision "freeze[s] county by county assessment practices"). Thus, Zion does not support the petitioners' contention that the PTAB employed the wrong classification method.
Furthermore, were we to consider uniformity as between counties, Edison presented evidence that the substantial majority of counties has used the process/building-related test, rather than the intent test. Uniformity would suggest that the minority ought to follow the majority form of assessment. See People ex rel. Boylan v. Illinois Central Gulf R.R. Co., 72 Ill.2d 387, 21 Ill.Dec. 198, 381 N.E.2d 276 (1978); Moniot, 11 Ill.App.3d 309, 296 N.E.2d 354. We note that nothing in Zion, 219 Ill.App.3d 550, 162 Ill.Dec. 268, 579 N.E.2d 1082, or Cherry Bowl, 100 Ill.App.3d 326, 55 Ill.Dec. 472, 426 N.E.2d 618, contradicts this analysis. To establish lack of uniformity in Zion and Cherry Bowl, the taxpayers presented evidence of the practices of merely a few townships' assessors. Zion, 219 Ill.App.3d at 560, 162 Ill.Dec. 268, 579 N.E.2d 1082; Cherry Bowl, 100 Ill.App.3d at 331, 55 Ill.Dec. 472, 426 N.E.2d 618. We agree with Zion and Cherry Bowl that the taxpayers' evidence was insufficient. However, these cases do not prevent a taxpayer from establishing lack of uniformity by presenting sufficient evidence regarding the practice of assessors throughout the State.
In addition, Cherry Bowl, 100 Ill.App.3d 326, 55 Ill.Dec. 472, 426 N.E.2d 618, and Ayrshire, 19 Ill.App.3d 41, 310 N.E.2d 667, do not support the petitioners' interpretation of the Freeze Act. In Cherry Bowl, this court applied the industrial plant doctrine to determine that the taxpayers' property (bowling lanes and pinsetters in Cherry Bowl, and coal preparation plant machinery and equipment in Ayrshire) was properly taxed as real property. Cherry Bowl, 100 Ill.App.3d at 331, 55 Ill.Dec. 472, 426 N.E.2d 618; Ayrshire, 19 Ill.App.3d at 46, 310 N.E.2d 667. However, neither case discusses the classification methods of Ogle County. The taxing districts at issue in Cherry Bowl and Ayrshire are Rockford Township in Winnebago County (Cherry Bowl, 100 Ill.App.3d at 327, 55 Ill.Dec. 472, 426 N.E.2d 618) and Fulton County, Ayrshire, 19 Ill.App.3d at 41, 310 N.E.2d 667, respectively. Further, unlike the case at bar, the Freeze Act did not apply in either case and neither taxpayer presented any evidence that any other classification method was used in the relevant counties. Thus, neither Cherry Bowl, 100 Ill.App.3d 326, 55 Ill.Dec. 472, 426 N.E.2d 618, nor Ayrshire, 19 Ill.App.3d 41, 310 N.E.2d 667, is dispositive of the instant case.
The petitioners assert that certain statements made by Representative Ewing contradict the PTAB's interpretation of the Freeze Act. We disagree. Representative Ewing was asked how the like-kind provision of the Freeze Act would affect a nuclear power plant built after 1979 or one not operating until after 1979. Representative Ewing stated, "It would have been assessed the way [the other plants] were. The practice would be continued." 82d Ill.Gen.Assem., House Proceedings, April 21, 1982, at 114-15 (statement of Representative Ewing). In response *140 to an assertion that there are no other nuclear power plants in the county, Representative Ewing stated:
"I would assume then that they will [be treated as other nuclear power plants], and this is an assumption, that they would have to assess that plant based on the general practices in the State of Illinois for nuclear plants. If they have no ... basis [sic]." 82d Ill.Gen.Assem., House Proceedings, April 21, 1982, at 115 (statement of Representative Ewing).
After reviewing the entire statement, we do not believe it supports the petitioners' position. In the first statement, Representative Ewing states that the practice would continue. This remark supports the PTAB's interpretation of the like kind provision. Further, the petitioners neglected to include a remark made by Representative Ewing that illustrates his uncertainty:
"And that is a real problem in this State, the nuclear power plants. Some were assessed almost completely as personal property and some have been assessed as real estate. I'm sorry I don't have a better answer for that." 82d Ill.Gen.Assem., House Proceedings, April 21, 1982, at 115 (statement of Representative Ewing).
Therefore, we believe the Representative's remarks are ambiguous at best and reflect the fact that he did not have a concrete answer to the question presented. These statements are at best equivocal, and, thus, they are not persuasive.
In addition, the petitioners assert that the power generating equipment added to Byron after 1978 has no like kind elsewhere in Ogle County. Despite the fact that there are no other nuclear power plants in Ogle County, the PTAB found that the process machinery and equipment were of like kind to other machinery and equipment in Ogle County classified as personal property before 1978. Because there was evidence to support this finding, it is not against the manifest weight of the evidence. Thus, we will not disturb it.
Next, the petitioners argue that the PTAB erroneously admitted property record cards into evidence. Assuming, arguendo, this argument has merit, the PTAB had ample evidence, notwithstanding the property cards, to support its findings. The property cards merely corroborated Troop's, Pierce's, Fridley's, and Elliot's testimony that Ogle County used the process-related/building-related classification methodology. Thus, the petitioners fail to establish that this alleged error was substantially prejudicial, affecting the outcome of the case. Wodziak v. Kash, 278 Ill.App.3d 901, 914, 215 Ill.Dec. 388, 663 N.E.2d 138 (1996). Even if the property cards were erroneously admitted, it is not reversible error. Wodziak, 278 Ill.App.3d at 914, 215 Ill.Dec. 388, 663 N.E.2d 138.
The petitioners assert that the PTAB erroneously adopted REAC's classification and appraisal of the Byron plant. The petitioners argue that REAC used erroneous legal standards, i.e., the "historical practices" and "like method" standards. After reviewing REAC's application of the like-kind standard, we find it consistent with the Freeze Act. Mr. Kelly, one of the REAC appraisers, testified that, in employing the like-kind standard, he first looked at Troop's affidavit to see how Ogle County assessed an item in the Byron ledger. If the item was not listed in an affidavit, Kelly looked at the narrative portion of Troop's affidavit to determine whether the item was process related or building related. As previously discussed, the Freeze Act freezes a county's pre-1979 method of classifying real and personal property. Thus, we determine that REAC's like kind analysis is consistent with the Freeze Act.
Further, we find REAC's use of the historical practices test immaterial. Kelly testified that the historical practices test examined whether the property in question was considered personal or real as of 1970 by assessors in Illinois. He also stated that the historical practices and like kind standards produced the same result. Because REAC's classification and appraisal were supported by a proper application of the like kind standard, the PTAB properly relied on REAC's classification and appraisal.
Further, because we have determined that the Freeze Act applies to Edison's equipment at Byron, we need not discuss the petitioners' *141 argument that Edison's power generating machinery is real property for purposes of the Property Tax Code. 35 ILCS 200/1-130 (West 1994). Finally, we have reviewed the petitioners' additional arguments and find them without merit.
The judgment of the Property Tax Appeal Board is affirmed.
Affirmed.
INGLIS and THOMAS, JJ., concur.