LAKE COUNTY BOARD OF REVIEW, Plaintiff-Appellant, *v.* PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellees.

Second District    No. 79-443

Opinion filed November 26, 1980.

Dennis P. Ryan, State's Attorney, of Waukegan (Robert J. Masini and William J. Blumthal, Assistant State's Attorneys, of counsel), for appellant.

Lawrence M. Dunlap, Special Assistant Attorney General, of Libertyville, and Donald E. Deuster, of Mundelein, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

The Lake County Board of Review (the Board) appeals from a judgment of the circuit court which, on administrative review, confirmed a decision of the Property Tax Appeal Board (PTAB) that the the lake property of defendant, Loch Lomond Property Owners Association (the Association), had no value for tax assessment purposes.

The property in question consists of a 75-acre lake which is owned and maintained by the Association for the exclusive use of its members who reside on and own the property surrounding the lake. The assessor for Freemont Township placed an assessed valuation of $300 per acre on the lake property in 1976.[1] The Association thereafter filed its complaint with the Board, which denied its request for a reduced assessment, and the Association then appealed to the PTAB.

At the hearing before the PTAB, the Association presented as evidence the deed by which it had acquired the lake, and other property, from its former owner, Arthur T. McIntosh and Company, a corporation. This instrument conveyed all interest in the lake to the Association subject, however, to the condition that the grantor would have the right to re-enter, possess and own the premises if the Association or its successor (1) attempted to sell, convey, mortgage, lease or otherwise dispose of the premises; (2) ceased its corporate activities or abandoned the premises; (3) failed to pay real estate taxes and assessments imposed upon the premises; or (4) if any creditor of the grantees sought to subject it to their claim; or (5) if the grantee permitted use of the premises by anyone other than the owners and occupants of real estate described in the declarations of certain restrictions and easements recorded in documents numbered 822721, 903401 and 874973 in the office of the recorder of deeds. The deed further provided that the conveyance to the Association was subject to other unspecified restrictions, rights and easements granted and reserved in those recorded documents; they were not offered in evidence, however, and are not a part of the record in this case.

---

[1] This constituted 33 1/3% of the fair cash value of $900 per acre (Ill. Rev. Stat. 1977, ch. 120, par. 501(1)) which thus represented a full value of $67,293 and an assessed valuation of $22,430 for the lake which was slightly less than 75 acres in area and comprised of three lots in the subdivision.

Donald Deuster, the attorney for the Association, testified, without objection, to telephone conversations he had with certain assessors of other Lake County townships regarding their assessing practices for "underwater lots." Attorney Deuster stated he had been informed that Duck Lake in Grant Township was assessed at $50 per acre and that each such lot in Avon Township was assessed at $100 regardless of size. He stated these assessors had expressed no opinion as to the fair cash value of the Association property, but that they considered that a lake which was owned by a property owners' association would have no market value.

Assistant State's Attorney William Blumthal, representing the Board, called as a witness Ken Larson, a deputy supervisor of assessments for Lake County. Mr. Larson testified that his office had appraised the subject property for the Board prior to its hearing of the Association's complaint. He stated that although the Illinois Real Property Appraisal Manual used by his office did not describe a method for appraisal of underwater property, it did provide directions for appraisal of vacant property. He testified he was not aware of any sales in Freemont Township of underwater property or of any market for that type of property, but that the property in question had a fair cash value of $400 per acre based upon the price at which good land would sell. He stated further that in its consideration of assessments made by the assessor of Freemont Township of the seven similar lakes owned by property owners' associations in the township the Board had found that an assessed value of $300 per acre was applied no matter where the lake was located or the type of subdivision surrounding it. He also noted that this sum was the lowest assessed value placed against any type of real property in that township and agreed there was no market for this type of property and considered his full valuation of $400 per acre to be nominal. He testified that the Board of Review rejected the appraisal made by the supervisor of assessments and declined to reduce the $300 per acre assessed valuation placed upon the Association's lake property by the assessor.

The hearing officer inquired of Mr. Larson whether the value of the amenities associated with the lake would be reflected in the values of the surrounding properties. The attorneys for both the Board and the Association responded. Mr. Blumthal stated he had been informed by a representative of the Department of Local Governmental Affairs that commonly owned property caused substantial assessing problems, particularly as they related to condominiums, and recommended that a nominal value be assigned if property is unimproved. Mr. Deuster stated that property next to a lake is assessed higher because of the amenities derived from the lake. The hearing officer again inquired of Mr. Larson whether there had been a reduction in the values assigned to the lots owned by the members of the Association, which surrounded the lake, to

correspond to the value assigned to the lake property. The witness responded that he did not know whether the assessor had done so.

No other evidence was presented by either party for consideration by the PTAB. The PTAB found that the value of the subject property had not been established by comparison sales, that the value of the amenities associated with the lake were reflected in the assessments of the adjoining residential lots and that any value on the subject property would be wholly arbitrary. It concluded that the lake property had no value independent of the lots and properties which contained the restrictive covenants and that it therefore had no assessable value. On administrative review, the circuit court confirmed the decision of the PTAB, and the Board appeals.

The Board contends that the finding of the PTAB that the lake property had no value for tax assessment purposes was against the manifest weight of the evidence and that its decision, in effect, constituted an unauthorized exemption of the property from taxation contrary to both statute and the Illinois Constitution.

■■ It is well established that on administrative review the courts will not weigh the evidence and will uphold the decision of an administrative agency when it is supported by competent evidence and is not against the manifest weight of that evidence. (*Board of Review v. Property Tax Appeal Board* (1979), 69 Ill. App. 3d 265, 268, 387 N.E.2d 394, 396-97.) We review the applicable law and the evidence in this case in that light.

All property in Illinois is subject to taxation unless specifically exempted (*Board of Education v. City of McHenry* (1979), 71 Ill. App. 3d 904, 906, 390 N.E.2d 551, 553), and none of the parties here suggest the lake in question is within an exempt class of property. (See Ill. Const. 1970, art. IX, §6; Ill. Rev. Stat. 1977, ch. 120, pars. 500.1 to 500.23).) The Revenue Act provides that all real property which is not exempt shall be assessed and taxed (Ill. Rev. Stat. 1977, ch. 120, par. 499), and such property is defined by the Act as including "[n]ot only the land itself, whether laid out in town or city lots, or otherwise, with all things contained therein, but also all buildings, structures and improvements, and other permanent fixtures, of whatsoever kind, thereon, and all rights and privileges belonging or in anywise pertaining thereto, except where the same may be otherwise denominated by this Act * * *." (Ill. Rev. Stat. 1977, ch. 120, par. 482(13).) "Land" has been defined as meaning "not only the soil or earth but also things of a permanent nature affixed thereto or found thereon, [such] as water * * *" (Black's Law Dictionary 1019 (4th ed. 1951)), and it has been held to include lakes, streams and submerged property. (*Slayton Gun Club v. Town of Shetek* (1970), 286 Minn. 461, 176 N.W.2d 544.) All real property in Illinois is assessed

according to its "fair cash value," which has been held to mean " 'what the property would bring at a voluntary sale where the owner is ready, willing, and able to sell but not compelled to do so, and the buyer is ready, willing, and able to buy but not forced so to do.' " *Springfield Marine Bank v. Property Tax Appeal Board* (1970), 44 Ill. 2d 428, 430, 256 N.E.2d 334, 336.

The Association contends, as it did before the PTAB, that because of the reverter clause in its deed, which would become operational should the Association sell its lake, that there is little likelihood anyone would be interested in purchasing the property at any price. Essentially, the Association argues that the fair cash value of property for taxing purposes may be determined by the status of its title as that may affect its marketability and that the finding of the PTAB that the property has no taxable value is supported by this evidence. It offers no authority in support of this view, and we find it is without merit.

A similar theory was advanced by the taxpayer in *Springfield Marine Bank*, where the question was presented whether the assessed value of property would be reduced where it was burdened with an unfavorable lease. The supreme court rejected this argument, holding that "[w]here the owner is not exempt, the tax is on the value of the property, not the value of the owner's interest; and it falls upon the owner of title, even where the right to use of the land has been transferred in a 99-year lease." (44 Ill. 2d 428, 430, 256 N.E.2d 334, 335-36. See also *People ex rel. McDonough v. Chicago Union Lime Works Co.* (1935), 361 Ill. 304, 308, 198 N.E. 1, 2; *Sanitary District v. Young* (1918), 285 Ill. 351, 370-71, 120 N.E. 818, 825.) In support of the Association's argument the PTAB refers to *Consolidation Coal Co. v. Property Tax Appeal Board* (1975), 29 Ill. App. 3d 465, 470, 331 N.E.2d 122, 127, where the court stated that lack of marketability was a proper consideration in valuing property for tax purposes. We note, however, that the court was considering that element as it related to the quality of the property in question and not with reference to the condition of the title held by its owner.

■■■ In determining what is the fair cash value of real property for tax purposes the guiding standard is directed towards determining that price at which ready, willing and able sellers and buyers would agree. This standard presupposes that the property is available for sale on the market and that there are buyers interested in purchasing it; it does not, however, permit an assessing body to give consideration to legal restrictions on the use of the property or infirmities in the title of the taxpayer.[2] We conclude

---

[2] See *Chrysler Corp. v. Illinois Property Tax Appeal Board* (1979), 69 Ill. App. 3d 207, 387 N.E.2d 351, for a discussion of some of the methods by which real property is valued.

that insofar as the Property Tax Appeal Board based its decision upon the inability of the Association to market the property because of title restrictions it was in error.

Similarly, we consider that the PTAB applied an improper method of valuation in determining the lake property had no value independent of the adjoining residential properties owned by members of the Association. It found that the value of the intangible amenities of the lake property were reflected in the assessed valuation of the residential property and therefore had no separate taxable value. No statutory or decisional authority has been offered in support of this theory of assessment.

It is apparent that property adjoining or in close proximity to a body of water, a park, golf course or other scenic view may well have an increased value because of its location. However, there is no assessment principle in Illinois which provides that the assessed value of the scenic property may itself be correspondingly reduced because of its effect on surrounding property. Cf. *Main Associates, Inc. v. B. & R. Enterprises, Inc.* (1962), 74 N.J. Super. 483, 181 A.2d 541; *Storrie Project Water Users Association v. Gonzales* (1949), 53 N.M. 421, 209 P.2d 530.

We conclude that insofar as the valuation of the Association's lake property was based upon the amenity theory of assessment, whereby its value was transferred to the adjoining properties, it was erroneous and cannot support the decision of the PTAB.

We have also reviewed the record of the proceedings before the PTAB to determine whether there is other evidence sufficient to sustain its decision and find there is not.

Aside from the two theories of property valuation for assessment purposes which we have considered and rejected, little evidence was presented directed at ascertaining the fair cash value of the property. It essentially consists of the hearsay testimony of attorney Deuster that certain assessors had told him lake property owned by a property owners' association has no market value (although they did, in fact, assess them), and Mr. Larson's testimony that the subject property was appraised by the supervisory of assessments at $400 per acre (which the Board of Review rejected in favor of the $900 per acre value arrived at by the assessor). No evidence was presented suggesting that the property had no value, as was determined by the PTAB.

The PTAB is authorized to base its decisions "* * * upon equity and the weight of evidence * * *." (Ill. Rev. Stat. 1977, ch. 120, par. 592.4.) It is limited in its determination of "equity," however, by the Revenue Act and the interpretations of it made by the courts. (*Lake County Board of Review v. Property Tax Appeal Board* (1980), 86 Ill. App. 3d 553, 555, 407 N.E.2d 1022, 1023.) It has also been held there is no presumption of

correctness accorded to an original assessment or that of a board of review (*Western Illinois Power Cooperative, Inc. v. Property Tax Appeal Board* (1975), 29 Ill. App. 3d 16, 22, 331 N.E.2d 286, 291); however, the determinations of these assessing bodies relating to the fair cash value of the property constitute the only evidence found in this record and do not support the decision of the PTAB.

For these reasons the judgment of the circuit court and the decision of the PTAB are reversed.

Reversed.

LINDBERG and UNVERZAGT, JJ., concur.