THE CHERRY BOWL, INC., Plaintiff-Appellant, *v.* ILLINOIS PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellees.

Second District    No. 81-101

Opinion filed September 18, 1981.

Robert J. Oliver, of Connolly, Oliver, Goddard, Coplan and Close, of Rockford, for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Karen L. Boyaris, Daniel D. Doyle, and Thomas J. Olle, Assistant Attorneys General, of counsel), for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Plaintiff, The Cherry Bowl, Inc., appeals from a judgment of the circuit court of Winnebago County which, on administrative review, confirmed a decision of the Property Tax Appeal Board (PTAB) that plaintiff's automatic pinsetter machines and bowling lanes installed in plaintiff's building constituted real property for purposes of taxation. Plaintiff raises three issues: (1) whether the PTAB's decision that automatic pinsetters and bowling lanes are real property for purposes of taxation was against the manifest weight of the evidence; (2) whether the PTAB erroneously refused to consider evidence of the assessment practices of assessors in other counties; and (3) whether PTAB's decision violates the State constitutional (art. IX, §5(c)) and statutory (Ill. Rev. Stat. 1979, ch. 120, par. 499.1) proscriptions against reclassification of personal property as real property for assessment purposes.

The Rockford township real estate assessor placed a value of $525,900 on plaintiff's land and building, including therein the pinsetters and lanes as part of it. Plaintiff filed a complaint with the Board of Review of Winnebago County which reduced the assessment to $413,127 because of an error in computation, but included the pinsetters and lanes as a part of the real estate. The PTAB thereafter denied plaintiff's claim that the value of the pinsetters and lanes should be omitted to reduce the assessed value to $283,363 and on review the circuit court confirmed that decision.

At the hearing before the PTAB evidence was presented that The Cherry Bowl, Inc., was a new corporate entity and its bowling establishment was first assessed for taxes in 1978, the assessment year at issue in this case. The building in which the bowling alley is located was constructed by plaintiff and completed in late December 1977 or early January 1978 and contains 32 automatic pinsetters and bowling lanes.

The evidence discloses that in constructing the lanes in plaintiff's building, a wooden substructure consisting of 2″ x 10″s standing on edge and braced by 2″ x 4″s was attached to the concrete floor by three stringers in each lane. Leveling strips were laid across this crib foundation and each lane was attached to the strips by 4″ wide wooden screws every 20 inches. The bowling lanes could be removed by backing out the screws

and cutting the lanes into three sections. It would take six men approximately six hours to remove one lane and no damage to the building would result. Further evidence was presented that bowling lanes are, in fact, sometimes removed from installations, as when a seller repossesses them upon default of the buyer, and that there is a ready market in the bowling industry for used lanes.

Each pinsetter machine is a steel A-frame with a box mounted on it, together with a pin and ball elevator. The pinsetter rests on a kickback, against which the balls and pins bounce, and is attached to it by six bolts. A pinsetter may be removed without damage to the building by removing these six bolts and two other bolts which attach it to the elevator. As is true with lanes, pinsetters are sometimes repossessed by conditional sellers and there is a ready market in the industry for used pinsetters.

The lanes and pinsetters in question had been previously installed in a bowling establishment in Japan prior to their purchase by plaintiff. If the pinsetters and lanes were removed, the wooden crib foundation could be dismantled and no damage would be caused to the building, which could then be used for other purposes.

The evidence also discloses that plaintiff did not file a personal property tax return for the year 1978 due to an oversight on the part of its accountant. The township personal property assessor thereupon prepared a return in which he listed the bowling lanes as personal property. Plaintiff paid the assessed tax, apparently under protest, and that matter was still unresolved at the time of the hearing before the PTAB.

■■ The findings of the PTAB on questions of fact are considered prima facie true and correct (*La Grange Bank v. Du Page County Board of Review* (1979), 79 Ill. App. 3d 474, 398 N.E.2d 992), and will not be set aside by the courts on administrative review where they are supported by competent evidence and are not against the manifest weight of the evidence. (*Lake County Board of Review v. Property Tax Appeal Board* (1980), 91 Ill. App. 3d 117, 414 N.E.2d 173; *Robinson v. Property Tax Appeal Board* (1979), 72 Ill. App. 3d 155, 390 N.E.2d 942.) We review the law and evidence presented in this light.

■■ All property in Illinois is subject to taxation unless specifically exempted. (*Lake County Board of Review v. Property Tax Appeal Board* (1980), 91 Ill. App. 3d 117, 414 N.E.2d 173.) The Revenue Act provides that all real property which is not exempt shall be assessed and taxed (Ill. Rev. Stat. 1979, ch. 120, par. 499), and such property is defined by the Act as including

> "[n]ot only the land itself, whether laid out in town or city lots, or otherwise, with all things contained therein, but also all buildings, structures and *improvements*, and other *permanent fixtures*, of whatsoever kind, thereon, and all rights and privileges belonging

or in anywise pertaining thereto, except where the same may be otherwise denominated by this Act. * * *." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 120, par. 482(13).)

If, as the PTAB found, the lanes and pinsetters are correctly classified as improvements or fixtures, their value would properly be included in the assessment of plaintiff's real estate.

In reaching its decision, the PTAB relied upon *Ayrshire Coal Co. v. Property Tax Appeal Board* (1974), 19 Ill. App. 3d 41, 310 N.E.2d 667, one of the few Illinois cases discussing the circumstances under which personal property may become an integral part of land or buildings so as to be considered as real property for purposes of taxation. There, the taxpayer contended that heavy coal processing equipment in a building complex covering several hundred feet should be considered as personal property. The equipment had been purchased by the taxpayer under a conditional sales contract which provided that it would not be considered as a fixture by the parties and that the seller might separate any part of the equipment from the real estate in order to repossess it should the purchaser default. Although the equipment had been assessed as personal property for the preceding five years, the court held it to be part of the real estate for purposes of real property tax assessment, stating:

"Where property is adapted to the use to which the realty is devoted the use thereof in such manner furnishes such strong evidence of intent to make it a part of the freehold as not to be overcome by bookkeeping practices." 19 Ill. App. 3d 41, 46, 310 N.E.2d 667, 671.

*Ayrshire Coal Co.* was later followed in *In re Tax Objections of Hutchens* (1976), 34 Ill. App. 3d 1039, 341 N.E.2d 169. In holding that a cabin which was transported to and installed on leased premises by the lessee under provisions which gave him the right to remove it at the end of the term should be assessed as part of the real estate, the court reasoned:

"Valid business and economic reasons exist for recognizing 'bookkeeping practices' and agreements between landlord and tenant and seller and purchasers concerning whether buildings and machinery shall be considered personal property and whether the same may be removed as far as the rights of the parties * * * are concerned. We agree with the ruling in *Ayrshire Coal Co.*, however, that such practices and agreements are no longer controlling as far as property taxes are concerned." (34 Ill. App. 3d 1039, 1041-42, 341 N.E.2d 169, 171.)

See also *United States v. 19.86 Acres of Land* (7th Cir. 1944), 141 F.2d 344.

In considering *Ayrshire Coal Co.* and *Hutchens*, plaintiff's arguments that the pinsetters and lanes may not be considered as improvements or permanent fixtures to land for tax purposes because of their previous

assessment as personal property, and because those items are considered as personal property in the industry, appear to be of little merit. Although plaintiff concedes that *Ayrshire Coal Co.* does not support its position, it contends that case should be limited to the factual context presented to that court. In this light, plaintiff argues it is not surprising that the coal preparation equipment was held to be part of the real estate under what the court termed the "integrated industrial plant" doctrine. Plaintiff asserts that if the rule in every case was that property "adapted to the use to which the realty is devoted" is real property, then every billiard table in a pool hall, or desk in a lawyer's office should also be considered to be real estate. As this court recently stated in a similar context, however, "it is the intent to permanently improve the real estate, not simply the intent to use the equipment in the business carried on in it * * *" which is relevant in determining whether an item of personal property has become a fixture. *B. Kreisman & Co. v. First Arlington National Bank* (1980), 91 Ill. App. 3d 847, 852, 415 N.E.2d 1070, 1074.

Plaintiff also contends that the rules applied in landlord and tenant cases as to the nature of fixtures should be applied in taxation cases. As the *Ayrshire Coal Co.* court noted, however, in matters relating to taxation the standards used to determine what are considered to be fixtures as between grantor and grantee, vendor and vendee, or mortgagor and mortgagee should apply, rather than the standards applied in landlord-tenant situations. The major difference between these doctrines is that annexations by a tenant are presumed to be for his benefit and not to enrich the freehold (*Empire Building Corp. v. Orput & Associates, Inc.* (1975), 32 Ill. App. 3d 839, 336 N.E.2d 82), while annexations made by an owner, as in the present case, are presumed to be made with the intent to permanently improve the premises. *Ayrshire Coal Co. v. Property Tax Appeal Board* (1974), 19 Ill. App. 3d 41, 310 N.E.2d 667.

Other jurisdictions have applied the same factors in determining whether bowling alleys are fixtures in nontaxation contexts and have drawn varied conclusions. In each case, the court did not feel bound by the parties' characterization of the items as personal property (*Essex Bowling Co. v. Argyle Realty Corp.* (1948), 322 Mass. 398, 77 N.E.2d 643; *Brunswick-Balke-Collender Co. v. Franzke-Schiffman Realty Co.* (1933), 211 Wis. 659, 248 N.W. 178; but see *Nadien v. Bazata* (1939), 303 Mass. 496, 22 N.E.2d 1 (landlord estopped from claiming lanes were fixtures where he encouraged tenant to buy the business in the belief that tenant would acquire title to lanes)), or by the fact that bowling equipment is regularly sold as used equipment in the industry. (*Brunswick-Balke-Collender Co.*) The *Essex Bowling Co.* court held the alleys were personal property, while the *Brunswick* court considered them to be fixtures. The key differences were that in the former, the building was

designed for many uses and in the latter, the building could only be used as a bowling alley and there was a failure to comply with Wisconsin's conditional sales statute.

■■ While the question is not free from difficulty, we conclude the trial court correctly determined that the decision of the PTAB was not contrary to the manifest weight of the evidence before it. We particularly note that the pinsetters and lanes were installed by plaintiff in its building which was constructed primarily for that purpose. These lanes and machinery were said to have a useful life of 20 to 50 years, and plaintiff intended to use them while it owned and operated the bowling establishment. Under these circumstances the property in question must be considered as permanent fixtures and improvements to the land and as real property for purposes of taxation.

Plaintiff next contends the PTAB erroneously excluded evidence of the assessment practices in certain other counties relating to bowling establishments. A witness called by plaintiff sought to testify to telephone conversations he had with various assessors and to introduce in evidence letters received from some of the assessors referring to that subject. Objections were made by defendants on the grounds an improper foundation had been laid for introduction of this evidence and, also, that it could only be received through the testimony of the respective assessors. The PTAB sustained the objections finding that such evidence was not relevant to the issue before it and was also hearsay.

■■ The objections were properly sustained. The interpretation given to the scope of section 1(13) of the Revenue Act (Ill. Rev. Stat. 1977, ch. 120, par. 482(13)) by a few of the many assessors applying it to bowling establishments throughout the State was not relevant to whether the Rockford township assessor had correctly done so in the present case. Nor would evidence of the varied approaches taken by them assist the PTAB in its resolution of the question before it. The offered testimony and documents were clearly hearsay, in any event, and on objection the PTAB properly declined to consider them. See *Baehr v. Health & Hospital Governing Com.* (1980), 86 Ill. App. 3d 43, 46, 407 N.E.2d 817, 820.

Plaintiff also contends on appeal that the decision of the PTAB violated constitutional and statutory proscriptions against reclassifying personal property as real property. Plaintiff's argument is based upon the constitutionally mandated abolition of the personal property tax for the years subsequent to 1978 and its proscription of an *ad valorem* tax on real estate as a replacement tax (Ill. Const. 1970, art. IX, §5(c)). Pursuant to this directive, the legislature provided that "[n]o property lawfully assessed and taxed as personal property under this Act prior to January 1, 1979, shall be classified as real property subject to assessment and taxation under this Act after January 1, 1979." (Ill. Rev. Stat. 1979, ch. 120, par.

499.1.) Plaintiff contends these provisions were violated since the pin-setters and lanes had been also assessed as personal property.

■■ As the PTAB correctly noted, however, the prohibitions against reclassifying property only apply to assessments subsequent to 1978 and, since the assessment at issue here was for 1978, plaintiff has not presented a justiciable controversy. Moreover, as plaintiff has raised this constitutional argument for the first time on appeal we need not consider it. *Skach v. Heakin* (1975), 28 Ill. App. 3d 346, 353, 328 N.E.2d 59, 64.

Accordingly, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

REINHARD and VAN DEUSEN, JJ., concur.