488 S.E.2d 857

**LONG COVE HOME OWNERS' ASSOCIATION, INC.,** Wexford Plantation Home Owners' Association, Inc., Port Royal Plantation Homeowners' Association, Inc., Moss Creek Owners' Association, Inc., and Hilton Head Plantation Property Owners' Association, Inc., Appellants,

v.

**BEAUFORT COUNTY TAX EQUALIZATION BOARD** (a/k/a Beaufort County Board of Assessment), and South Carolina Department of Revenue and Taxation, Respondents.

No. 24656.

Supreme Court of South Carolina.

Heard Jan. 7, 1997.

Decided July 28, 1997.

136

A. Camden Lewis, of Lewis Babcock & Hawkins, LLP, Columbia, for appellants.

Ladson F. Howell and Stephen P. Hughes, both of Howell, Gibson & Hughes, Beaufort, for Respondent Beaufort County.

General Counsel Harry Cooper, Chief Counsel for Revenue Litigation Ronald W. Urban, and Counsel for Revenue Litigation Jeffery M. Nelson, Columbia, for Respondent S.C. Department of Revenue and Taxation.

BURNETT, Justice.

Appellants seek review of the decision of the circuit court affirming the South Carolina Department of Revenue and Taxation's (Department's) decision upholding the separate taxation of the common areas within planned unit developments. We reverse.

## *FACTS*

Taxpayers in this matter are the Wexford Plantation Home Owners' Association, Port Royal Plantation Homeowners' Association, Long Cove Home Owners' Association, Moss Creek Owners' Association and Hilton Head Plantation Property Owners' Association (hereinafter owners' associations).

The properties in question are located in planned unit developments (PUDs) located on Hilton Head Island. The real property varies in character and the parcels include wooded areas, lagoons, open areas, roadways, buildings for maintenance and administrative purposes, golf courses and club houses. These parcels are the common properties of the PUDs and are deeded to the owners' associations which are not-for-profit corporate entities whose members are the residential lot owners of the PUDs. Use of these common areas is restricted to the homeowners and their invited guests. The lots of the individual homeowners in these PUDs are deeded subject to recorded declarations of covenants, conditions and

restrictions, and each homeowner is granted an undivided interest in the common areas, which runs with the land.

Until 1991, the common properties were assessed at a $0.00 or nominal tax value. According to the deposition of Mr. Gay, a former Beaufort County tax assessor, the value of the common areas was reflected in the value placed on the residential lots within the PUDs and thus the common areas were not separately taxed. However, in 1991, the Beaufort County Tax Assessor reassessed some golf courses, club houses and other similar facilities, assigning to them a value many times greater than that of prior years. In 1993, the Tax Assessor assessed all the other common properties with substantial increases in value. On June 6, 1993, the Assessor prepared a valuation chart to assist the staff appraisers in the valuation of common areas. The staff appraisers were ordered to value all common properties at a set rate based on the acreage of the parcel. As a result of this reassessment, the property tax obligation of the owners' associations increased.

The owners' associations appealed all common areas tax assessments to the Beaufort County Tax Equalization Board (Board). Because the legal issues were the same, the owners' associations consolidated their appeals of the assessments before the Board. The Board heard arguments from the owners' associations and Beaufort County on July 6, 1994. By agreement, the parties limited the arguments to the legal question of whether the Tax Assessor could separately tax the common areas. The specific values of the properties were not discussed or decided. The Board issued a written decision on August 24, 1994. Because it felt compelled to follow prior South Carolina Tax Commission decisions, the Board held the property was taxable and had value separate from the owners' lots.

Appellants appealed the Board's decision to the Department. On January 25, 1995, the Department issued its order holding the common areas have value and are taxable; voluntary restrictions are not considered when valuing these properties; the valuation method used by the Assessor was proper; and the Department had the authority to order the spot reassessment. The Department's decision was affirmed by the circuit court.

## ISSUES

I. Did the Beaufort County Tax Assessor have the legal authority or power to conduct the reassessment of the common areas?

II. When assessing the value of these common properties, should the restrictions on their uses be considered?

III. Was the valuation method used by the Tax Assessor's office arbitrary and contrary to the law of South Carolina?

IV. Is an imposition of property tax on the common areas double taxation and, therefore, contrary to the South Carolina Constitution?

## DISCUSSION

### Standard of Review

■ The South Carolina Administrative Procedures Act (APA) controls the standard of review of this case. Under the APA, the Supreme Court may not substitute its judgment for that of a state agency as to the weight of the evidence on questions of fact. S.C.Code Ann. § 1–23–380(5) (Supp.1995). The Supreme Court may reverse or modify an agency decision which is clearly erroneous in view of the substantial evidence on the whole record; which is in violation of a constitutional or statutory provision; or which is arbitrary. S.C.Code Ann. § 1–23–380(6) (Supp.1995). Substantial evidence is evidence which would allow reasonable minds to reach the conclusion the administrative agency reached. *Carroll v. Gaddy,* 295 S.C. 426, 368 S.E.2d 909 (1988). The Department is the factfinder for purposes of judicial review. *Lindsey v. S.C. Tax Commission,* 302 S.C. 504, 397 S.E.2d 95 (1990).

### I.

■ The owners' associations contend the Beaufort County Tax Assessor lacked the legal authority or power to conduct the reassessment of the common areas during a non-assessment year. We agree.

The statute prohibits reassessment in a non-assessment year except in limited circumstances. S.C.Code Ann. § 12–41–120 (1976) ("[b]ut real estate shall be valued and assessed by any such board only in those years in which real estate is

by law required to be returned . . . ."). The statute only allows an assessor, without direction from the Department, to reassess properties under the following limited circumstances: if done on a county-wide basis in a legal assessment year, S.C.Code Ann. § 12–43–210(B) (Supp.1995); if the property was omitted property, S.C.Code Ann. § 12–41–120 (1976); or if there was a change in conditions on the property, S.C.Code Ann. § 12–37–90 (Supp.1995).

Here, the years in which the properties were reassessed, 1991 and 1993, were not legal reassessment years.[1] The Tax Assessor failed to reassess all the property in the county when he reassessed the common areas. Moreover, this property was not omitted property as Beaufort County contends. *See* S.C.Code Ann. § 12–39–220 (1976). Because the parcels were assigned tax map numbers and had been assessed a market value of zero or near zero in prior tax years, the Department found the properties were listed on the tax rolls and were not omitted property. Substantial evidence supports this finding of fact. The Department further found the power to assess omitted property does not carry with it the power to revalue property already assessed. Further, there was no change in condition of these properties warranting a reassessment. Therefore, the Tax Assessor lacked the authority to reassess these properties.

Although the Tax Assessor did not have the authority to reassess this property, the Department has the power to direct an assessor to reassess the common areas because of an error of law. *See* S.C.Code § 12–4–520(3) (Supp.1995) (directing the Department "to take any action necessary to insure the proper assessment, equalization, and taxation" of property in each county in South Carolina); *see also* S.C.Code Ann. § 12–4–510(3) (Supp.1995) (granting Department power to order reassessment to insure property is assessed in compliance with the law). These statutes provide the Department with the power to order spot reassessments in non-reassessment years.

---

1. According to the owners' associations, the previous authorized year was 1988, and the next authorized year was 1996. At oral argument, Beaufort County stated reassessment of all the county's property is to take place in 1997.

However, the Department must follow the statutory procedures when ordering spot reassessments. Under § 12–4–520(3), the Department must conduct an investigation to determine if a county is properly assessing and taxing property. Only after an investigation may the Department order the assessor to conduct a reassessment.

■ Here, the Department attempted to ratify the reassessment and to give it retroactive effect within its order. Further, the Department ordered the reassessment without an investigation. The Department has no power to retroactively approve a spot reassessment. Instead, the Department must first conduct an investigation and determine whether a reassessment is necessary.

Thus, the Tax Assessor did not initially have authority or power to reassess the common properties. Although the Department could order the assessor to reassess these properties after an investigation, it lacked the power to ratify a reassessment or to order a reassessment without conducting its own investigation.

## II.

■ The owners' associations claim the restrictions placed on the use of the land should be considered when valuing these common properties. We agree.

■ Section 12–37–930 provides:

All property must be valued for taxation at its true value in money which in all cases is the price which the property would bring following reasonable exposure to the market, where both the seller and the buyer are willing, are not acting under compulsion, *and are reasonably well informed of the uses and purposes for which it is adapted and for which it is capable of being used.*

S.C.Code Ann. § 12–37–930 (1995) (emphasis added). This language mandates that regardless of method used to determine true value, deed restrictions affecting the use of the land must be considered when determining value. *See S.C. Tax Com'n v. S.C. Tax Board of Review*, 287 S.C. 415, 339 S.E.2d 131 (Ct.App.1985) (a lease affects the use of property and must be considered when valuing property).

The Department urges us to find voluntary or self-imposed restrictions are not to be considered when determining taxation value. However, because most restrictions imposed on the use of land are voluntary, we decline to adopt this rule. *See S.C. Tax Com'n, supra* (a lease is entered into voluntarily, yet the limitations it places on the use of the property must be considered when determining value). Therefore, the deed restrictions on the uses of the common areas should be taken into account when valuing these parcels for taxation purposes.

■ The owners' associations further contend because the deed restrictions on the common areas destroy the marketability of this property, the common areas have no value for taxation purposes. Specifically, the owners' associations argue the property's value is zero because no willing buyer exists for this restricted use property. We disagree.

All property in South Carolina is subject to taxation unless specifically exempted. S.C. Const. art. III, § 29; S.C. Const. art. X; S.C.Code Ann. §§ 12–37–210 & 12–37–220 (1976 & Supp.1995). The common areas do not fall within the exemptions; therefore, they are taxable. All real property in South Carolina must be assessed according to its "true value in money," which has been held to mean fair market value. S.C.Code Ann. § 12–37–930 (Supp.1995); *see Lindsey, supra; S.C. Tax Com'n, supra.*

■ Section 12–37–930 only requires the assessed value to reflect market value. The "willing buyer/willing seller" standard in this section is hypothetical in nature and may be assumed when no actual market exists for a particular parcel of land. *See United States v. Simmons,* 346 F.2d 213 (5th Cir.1965) (willing buyer and seller are hypothetical). Other methods, such as cost or income, may be used to measure market value when no willing buyer exists.

Under the owners' associations' approach, the ownership of the property is valued and not its use. However, this Court has held use of the property is the determinative factor when valuing the property for taxation purposes. *See Lindsey, supra.* Although the restrictions placed on the common property may destroy its marketability, the property may still have value in its uses for taxation purposes.

■ We also specifically reject the owners' associations' argument that the value of the common areas is already included in the value of the residential lots. This argument is premised on the false presumption that when property values increase because of proximity to certain types of property, such as lakes, golf courses, or oceans, the value of the property causing the increase must be correspondingly reduced.

A similar argument was rejected in *Lake County Board v. Property Tax Appeal Board*, 91 Ill.App.3d 117, 46 Ill.Dec. 451, 414 N.E.2d 173 (Ct.1980), where the court posited:

> It is apparent that property adjoining or in close proximity to a body of water, a park, golf course or other scenic view may well have an increased value because of its location. However, there is no assessment principle in Illinois which provides that the assessed value of the scenic property may itself be correspondingly reduced because of its effect on surrounding property.

*Id.* 46 Ill.Dec. at 454, 414 N.E.2d at 176. South Carolina also has no assessment principle which would allow the assessed value of the common areas to be reduced because of its effect on surrounding property. Under South Carolina's assessment system, the owner of the property must bear the tax, not the users of the property. S.C.Code Ann. § 12–37–610 (1976). Therefore, the value of the common areas cannot be assessed to the individual lot owners nor can its value be reflected in the valuation of the residential lots by increasing the value of those lots.[2]

### III.

The owners' associations claim the chart used to determine the value of the common properties was arbitrary because it only considered the size of the property. Because the Tax Assessor lacked the authority to reassess this property, we need not determine if this chart was arbitrary. Further, the record is inadequate to determine whether "true value" appraisals support this chart. However, if the chart is not

---

2. Due to Gay's deposition indicating the value of common areas was included in the value of residential lots, on remand, the value of residential lots must be considered to ensure no violation of double taxation.

supported by "true value" appraisals, the use of the chart to determine the value of the common properties would be contrary to the statutory mandate that fair market value must reflect the uses and purposes for which the property is adopted and for which it is capable of being used. S.C.Code Ann. § 12–37–930 (Supp.1995).

## IV.

The owners' associations contend they are subjected to double taxation in violation of the South Carolina Constitution because both the owners' associations and the individual lot owners are paying taxes on the common areas. Because the discussion in Issue II addressed the owners' associations' concerns about double taxation, we do not separately address this issue here.

**REVERSED.**

FINNEY, C.J., TOAL and WALLER, JJ., and JOHN W. KITTREDGE, Acting Associate Justice, concur.