360 S.C. 135 (2004)
600 S.E.2d 80
Brett BURSEY and Mining Association of South Carolina, Respondents,
v.
SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL and South Carolina Electric and Gas Company, Appellants.
No. 3813.
Court of Appeals of South Carolina.
Submitted May 12, 2004.
Decided June 1, 2004.
Rehearing Denied August 18, 2004.
*137 Elizabeth B. Partlow and Thomas G. Eppink, of Columbia, for Appellant South Carolina Electric and Gas Company.
Mason A. Summers, of Columbia, for Appellant South Carolina Department of Health and Environmental Control.
Brett Bursey, of Lexington, pro se.
Gregory J. English, of Greenville, for Respondent Mining Association of South Carolina.
ANDERSON, J.:
The South Carolina Department of Health and Environmental Control ("DHEC") and the South Carolina Electric and Gas Company ("SCE & G") appeal a Circuit Court order affirming the decision of the South Carolina Mining Council. The Mining Council, deciding an appeal of a DHEC determination that SCE & G would not be required to obtain a mining permit in connection with its Lake Murray Dam remediation project (also referred to in various documents and briefs as the Saluda River Dam remediation project), ruled that SCE & G was required to obtain a mining permit. We affirm.[1]

FACTUAL/PROCEDURAL BACKGROUND
SCE & G is currently engaged in a dam remediation project, which includes construction of a back-up dam for the existing Saluda Dam at Lake Murray in Lexington County, South Carolina. The erection of this back-up dam is to be accomplished by mining materials from the construction site for use in the dam's construction. The quarry mined for this construction will cover from ten to sixty acres and possibly constitute the largest quarry in South Carolina upon completion. Activities in connection with this project will include exploration of the land for suitable materials, blasting, de-watering, crushing raw materials, and the production of concrete. All activities associated with this mining and construction will be conducted at the SCE & G site. None of the mined material will be used for off-site purposes or sold to third parties.
*138 By letter dated May 15, 2001, SCE & G requested from DHEC a "letter of verification" stating that SCE & G was not required to obtain a mine operating permit for this project. Craig Kennedy, Assistant Division Director for the Division of Mining and Solid Waste Management, responded in a June 5, 2001, letter that, because the mining proposed by SCE & G fell within an exception to the South Carolina Mining Act ("the Act"),[2] SCE & G was not required to obtain a mine operating permit for the project. Kennedy based his finding on the following language of the Act:
(1) "Mining" means:
(a) the breaking of the surface soil to facilitate or accomplish the extraction or removal of ores or mineral solids for sale or processing or consumption in the regular operation of a business;
(b) removal of overburden lying above natural deposits of ore or mineral solids and removal of the mineral deposits exposed....
... Mining does not include excavation or grading when conducted solely in aid of on-site farming or of on-site construction.
S.C.Code Ann. § 48-20-40(1) (Supp.2003). Kennedy concluded: "[A] mine operating permit is not required for landowners excavating on their own property [when] all the excavated material is used on that same tract of land or contiguous tracts of land by the same land owner." Because Kennedy determined the proposed project constituted "on-site construction" as contemplated by the Act, DHEC did not require SCE & G to acquire a mine operating permit.
The Mining Association of South Carolina ("MASC") and Brett Bursey (collectively, "Respondents") appealed the DHEC decision to the Mining Council, a quasi-judicial body established by statute for the purpose of, among other things, hearing appeals of agency decisions related to mine operating permits. See S.C.Code Ann. §§ 48-20-40(2), XX-XX-XXX, 48-21-10, 48-21-20 (1987 & Supp.2003). Bursey's appeal, dated October 17, 2001, was received on October 22. MASC's appeal, dated October 19, 2001, was received on October 26.
*139 SCE & G and DHEC filed motions with the Mining Council to dismiss the appeals on the ground that they were filed more than thirty days after Respondents had notice of the decision not to require a permit. See S.C.Code Ann. § 48-20-190 (Supp.2003) ("The person taking the appeal within thirty days after the department's decision shall give written notice to the council through its secretary that he desires to appeal and filing a copy of the notice with the department at the same time."); 26 S.C.Code Ann. Regs. 89-290(B) (Supp.2003) ("The person taking the appeal shall within thirty days after notification of the Department's decision, give written notice to the Mining Council through its secretary that he desires to take an appeal, at the same time filing a copy of the notice with the Department."). The Mining Council denied the motions to dismiss and reversed DHEC's decision, ruling that the SCE & G project required a mining permit under the Act.
SCE & G and DHEC (collectively, "Appellants") appealed the Mining Council's ruling to the Circuit Court. The court, applying the Administrative Procedures Act's (the "APA") "substantial evidence" standard of review, affirmed the Council's rulings on both the timeliness of the appeals and the interpretation of the Act requiring SCE & G to obtain a mine operating permit.

ISSUES
I. Did the Circuit Court err in applying the APA's "substantial evidence" standard of review?
II. Did the Circuit Court err in affirming the Mining Council's findings that Respondents' appeals were timely?
III. Did the Circuit Court err in affirming the Mining Council's conclusion that SCE & G's proposed activities require a mine operating permit?

LAW/ANALYSIS

I. Standard of Review
Appellants argue the Circuit Court erred in applying the "substantial evidence" standard of review enunciated in the APA. See S.C.Code Ann. § 1-23-380(A)(6) (Supp.2003). Appellants contend the Mining Act, via the Act's reference to *140 "Chapter 7 of Title 18," mandates a broader standard. See S.C.Code Ann. § 48-20-200 (Supp.2003). We disagree.
A directly affected party, aggrieved by a DHEC determination to grant a mine operating permit, may appeal the decision to grant said permit to the Mining Council.[3] S.C.Code Ann. § 48-20-190 (Supp.2003). A party is then granted the right to appeal the ruling of the Mining Council to the Circuit Court. S.C.Code Ann. § 48-20-200 (Supp.2003). Section 48-20-200 requires that this appeal be taken "in the manner provided by Chapter 7 of Title 18." Id.
Chapter 7 of Title 18 generally deals with appeals to the Circuit Court from lower courts, namely the Magistrate's Court. See S.C.Code Ann. § 18-7-10 (1985). The chapter mainly concerns the procedural process these appeals are to follow when seeking review by the Circuit Court. See, e.g., S.C.Code Ann. § 18-7-20 (Supp.2003) (granting thirty days from the date of the notice of the judgment in which to file a written notice of appeal to the Circuit Court). In addition, the chapter includes a general jurisdictional statute, section 18-7-10. The chapter later bestows upon the Circuit Court a broad scope of review when hearing appeals which fall under this jurisdictional grant. See S.C.Code Ann. § 18-7-170 (1985) ("In giving judgment the court may affirm or reverse the judgment of the court below, in whole or in part, as to any or all the parties and for errors of law or fact."); Parks v. Characters Night Club, 345 S.C. 484, 489-90, 548 S.E.2d 605, 608 (Ct.App.2001) ("Section 18-7-170 provides that on appeal from Magistrate's Court, the Circuit Court may make its own findings of fact.").
Appellants' assertion that the legislature intended Chapter 7's broad standard of review to apply to decisions of the Mining Council is unsound. The standard of review in section 18-7-170 is meant only to apply in appeals over which the Circuit Court gains jurisdiction solely by the jurisdictional grant of section 18-7-10, and not appeals where the court's jurisdiction is, by virtue of a separate statute, otherwise *141 provided for "`by law.'" See Karl Sitte Plumbing Co. v. Darby Dev. Co., 295 S.C. 70, 76, 367 S.E.2d 162, 165 (Ct.App.1988) ("Section 18-7-10 and 18-7-170... apply where appeals of inferior courts or jurisdictions are not otherwise provided for `by law.'"). The Circuit Court's jurisdiction over decisions of the Mining Council is granted by the Mining Act and not section 18-7-10. Therefore, this de novo standard of review does not automatically apply. Appeals from administrative agencies instead typically fall under the APA and its "substantial evidence" standard of review. See S.C.Code Ann. § 1-23-380 (Supp.2003); Waters v. South Carolina Land Res. Conservation Comm'n, 321 S.C. 219, 467 S.E.2d 913 (1996).
In Waters v. South Carolina Land Resources Conservation Commission, the South Carolina Land Resources Conservation Commission (SCLRCC) granted J.M. Huber Corporation a permit to mine kaolin in Lexington County. The South Carolina Mining Council affirmed SCLRCC's decision. An appeal was filed in the Circuit Court seeking review of the Mining Council order. The Circuit Court upheld the decision of SCLRCC and the Mining Council. On appeal, our Supreme Court applied the Administrative Procedures Act for appellate review purposes:
This court's review of an administrative agency's findings of fact are limited. The court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." S.C.Code Ann. § 1-23-380(A)(6) (Supp.1994). A court can reverse an agency's findings, inferences, conclusions or decisions only if they are, as appellants here argue, "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record," or "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." S.C.Code Ann. §§ 1-23-380(A)(6)(e),-380(6)(f) (Supp.1994).
"Substantial evidence is not a mere scintilla of evidence nor evidence viewed blindly from one side, but is evidence which, when considering the record as a whole, would allow reasonable minds to reach the conclusion that the agency reached." Palmetto Alliance, Inc. v. South Carolina Pub. Serv. Comm'n, 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984). The possibility of drawing two inconsistent conclusions from *142 the evidence will not mean the agency's conclusion was unsupported by substantial evidence. Id. Furthermore, the burden is on appellants to prove convincingly that the agency's decision is unsupported by the evidence. See Hamm v. AT & T, 302 S.C. 210, 394 S.E.2d 842 (1990).
Applying these principles to the instant case, we find the record contained "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that Huber's mining operation would not cause an increase in the radioactive level of the water supply. South Carolina Dep't of Mental Retardation v. Glenn, 291 S.C. 279, 281, 353 S.E.2d 284, 286 (1987). The fact that Kennedy relied on circumstantial rather than direct evidence in forming his conclusions goes to the weight of the evidence. See Bilton v. Best Western Royal Motor Lodge, 282 S.C. 634, 321 S.E.2d 63 (Ct.App.1984) (circumstantial evidence and inferences drawn therefrom may be relied on to support a finding of fact of an administrative agency); see also Palmetto Alliance, Inc., 282 S.C. at 433, 319 S.E.2d at 697 (an agency's findings cannot be overturned "unless there is no reasonable probability that the facts could be as related by [the] witness upon whose testimony the finding is based"). Thus, the agency's decision was neither arbitrary, capricious, nor characterized by an abuse of discretion. See Fontaine v. Peitz, 291 S.C. 536, 354 S.E.2d 565 (1987) (an abuse of discretion occurs when a factual ruling is without evidentiary support).
Id. at 226-27, 467 S.E.2d at 917 (footnotes omitted).
Appellants assert that the standard of review was not a litigated issue in Waters. In applying the APA as a standard of review in Waters, our Supreme Court apodictically gave implicit and tacit approbation to the efficacy and applicability of the APA in an appeal from a Mining Council order.
The Mining Act's absence of a statute specifically prescribing a standard of review does not mandate that the Circuit Court apply a generalized standard found in a broadly referenced chapter of the Code, but rather manifests the intent of the General Assembly that the standard of review not depend "`upon which appellate court is to determine the appeal.'" Karl Sitte Plumbing Co. v. Darby Dev. Co., 295 S.C. 70, 76, *143 367 S.E.2d 162, 166 (Ct.App.1988) (quoting May v. Hopkinson, 289 S.C. 549, 347 S.E.2d 508 (Ct.App.1986)). It is abundantly clear our Supreme Court has applied the APA's "substantial evidence" standard of review to appeals from Mining Council decisions. Concomitantly, the adoption of Appellants' arguments would vary the applicable standard of review from appellate court to appellate court and contradict this legislative intent. See Waters, 321 S.C. at 226-27, 467 S.E.2d at 917 (unmistakably applying the "substantial evidence" standard found in the APA to an appeal of a Mining Council decision). We conclude the language of section 48-20-200  appeals may be taken "in the manner provided by Chapter 7 of Title 18"  offers one seeking appeal of a Mining Council decision the procedural guidelines for doing so and does not convey to the Circuit Court the Chapter's broad standard of review.
The APA defines "[a]gency" as "each state board, commission, department, executive department or officer ... authorized by law to make regulations or to determine contested cases." S.C.Code Ann. § 1-23-10(1) (Supp.2003). Because the Mining Council is a commission authorized by law to determine contested cases concerning mine operating permits, it is an agency under the APA's definition. Thus, appeals from the Mining Council's decisions are properly decided under the APA's standard of review. See, e.g., Waters, 321 S.C. at 226-27, 467 S.E.2d at 917.
We find no error in the Circuit Court's application of the "substantial evidence" standard of review to the Mining Council's decision. Not only does the APA control the scope of review utilized by the Circuit Court, but it also requires this Court to apply the "substantial evidence" standard to this appeal.
Under the scope of review established in the APA, this Court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." S.C.Code Ann. § 1-23-380(A)(6) (Supp.2003); Long Cove Home Owners' Ass'n, Inc. v. Beaufort County Tax Equalization Bd., 327 S.C. 135, 488 S.E.2d 857 (1997). A reviewing court may reverse or modify a decision of an agency if the findings, inferences, conclusions or decisions of that agency are "clearly erroneous in view of the reliable, probative and *144 substantial evidence on the whole record," or "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." S.C.Code Ann. § 1-23-380(A)(6)(e), (f) (Supp.2003); McCraw v. Mary Black Hosp., 350 S.C. 229, 565 S.E.2d 286 (2002); Waters v. South Carolina Land Res. Conservation Comm'n, 321 S.C. 219, 467 S.E.2d 913 (1996); see also Etheredge v. Monsanto Co., 349 S.C. 451, 562 S.E.2d 679 (Ct.App.2002) (stating court may not substitute its judgment for that of agency as to weight of evidence on questions of fact unless agency's findings are clearly erroneous in view of reliable, probative, and substantial evidence on whole record).
Under this "substantial evidence" standard of review, the factual findings of the agency are presumed correct and will be set aside only if unsupported by substantial evidence. Sea Pines Ass'n for the Prot. of Wildlife, Inc. v. South Carolina Dep't of Natural Res. & Cmty. Servs. Assocs., Inc., 345 S.C. 594, 550 S.E.2d 287 (2001); Kearse v. State Health & Human Servs. Fin. Comm'n, 318 S.C. 198, 456 S.E.2d 892 (1995); Frame v. Resort Servs., Inc., 357 S.C. 520, 593 S.E.2d 491 (Ct.App.2004). Substantial evidence is not a mere scintilla of evidence, nor evidence viewed blindly from one side, but is evidence which, when considering the record as a whole, would allow reasonable minds to reach the conclusion that the agency reached in order to justify its action. Waters, 321 S.C. at 226, 467 S.E.2d at 917; Corbin v. Kohler Co., 351 S.C. 613, 571 S.E.2d 92 (Ct.App.2002); Muir v. C.R. Bard, Inc., 336 S.C. 266, 519 S.E.2d 583 (Ct.App.1999). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's conclusion from being supported by substantial evidence. Sharpe v. Case Produce, Inc., 336 S.C. 154, 519 S.E.2d 102 (1999); Grant v. South Carolina Coastal Council, 319 S.C. 348, 461 S.E.2d 388 (1995); Muir, 336 S.C. at 282, 519 S.E.2d at 591. "[T]he burden is on Appellants to prove convincingly that the agency's decision is unsupported by the evidence." Waters, 321 S.C. at 226, 467 S.E.2d at 917; Tennis v. South Carolina Dep't of Soc. Servs., 355 S.C. 551, 558, 585 S.E.2d 312, 316 (Ct.App.2003).

*145 II. Timeliness of the Appeals
Appellants maintain the Circuit Court erred in affirming the Mining Council's finding that Respondents' appeals were timely. We disagree.
Respondents' arguments related to timeliness arise from the portion of the Mining Act that provides:
The person taking the appeal within thirty days after the department's decision shall give written notice to the council through its secretary that he desires to appeal and filing a copy of the notice with the department at the same time.
S.C.Code Ann. § 48-20-190 (Supp.2003) (emphasis added). While the language of the Mining Act seems to require notice of appeal to be filed within thirty days of the actual decision, the Act's concomitant regulations state that the triggering point for the thirty-day clock is the date of notice of the DHEC decision. See 26 S.C.Code Ann. Regs. 89-290(B) (Supp.2003) ("The person taking the appeal shall within thirty days after notification of the Department's decision, give written notice to the Mining Council through its secretary that he desires to take an appeal, at the same time filing a copy of the notice with the Department.") (emphasis added). The Act contains strict public notice requirements regarding the grant of a mine operating permit which make the date of notice easy to determine in those situations. See S.C.Code Ann. § 48-20-70 (Supp.2003). However, because the triggering occurrence in the case at bar could be classified as a non-event (the decision not to require SCE & G to obtain a permit), concepts of general fairness required the Mining Council to determine the time Respondents received actual notice that DHEC had made the final decision not to require a permit before starting the thirty day clock.

A. The Bursey Appeal
Appellants claim that a conversation between Bursey and a DHEC employee  Craig Kennedy, Assistant Division Director for the Division of Mining and Solid Waste Management  provided Bursey with notice of the DHEC decision well before thirty days prior to the filing of his notice of appeal. As evidence of Bursey's knowledge of the DHEC decision, Appellants presented a letter from Bursey to DHEC dated June 29, *146 2001, which stated in part: "It is my understanding that DHEC staff has determined that the quarry operation need not be permitted." Appellants allege that this letter constitutes proof of Bursey's actual notice of the decision almost four months prior to the filing of his notice of appeal. Yet, a closer look at the entirety of the record reveals that this letter is not exactly the "smoking gun" Appellants claim.
While the letter does convey Bursey's knowledge that some "staff" at DHEC made a cursory decision not to require a permit, the letter as a whole seems to concern a "storm water permit" and makes no mention of a mine operating permit. At trial, Bursey declared he did not have knowledge of a final decision until October 15 and this letter was merely an unanswered request for more information about DHEC's determinations in regard to the SCE & G project. The language of the letter supports this view of the evidence. DHEC did not respond to the letter with any finalized determinations about the project. Consequently, the date of Bursey's actual notice of the decision not to require a mine operating permit remains a disputed issue of fact.
Because evidence was presented on the issue, the final determination by the Mining Council was essentially based on the weight the Council placed on conflicting evidence. Pursuant to this Court's scope of review, we "shall not substitute [our] judgment for that of the agency as to the weight of the evidence on questions of fact." Waters, 321 S.C. at 226, 467 S.E.2d at 917 (citing S.C.Code Ann. § 1-23-380(A)(6) (Supp.2003)). We affirm the decision of the Circuit Court as to the timeliness of Bursey's appeal.

B. The MASC Appeal
Appellants aver that a telephone conversation between a MASC official and a DHEC employee constituted actual notice of the DHEC decision not to require a mine operating permit more than thirty days prior to the filing of MASC's notice of appeal. Craig Kennedy, of DHEC, testified the decision was discussed with a MASC official in a telephone conversation on or around September 10, 2001. The record reveals that the communication of this decision was equivocal. Kennedy stated that he agreed to discuss the matter further with his supervisors. *147 The MASC official reasonably interpreted this communication to mean that a final determination had yet to be made. The MASC official testified he did not receive notice of a final decision until September 27, within thirty days of his appeal.
The issue of timeliness as to the MASC appeal was a disputed issue of fact, with substantial evidence presented to the Mining Council on the issue. In weighing the conflicting evidence, the Council determined the MASC official's testimony was more credible and concluded, as a factual matter, the MASC appeal was timely filed.
In appeals of agency decisions, the agency's factual findings are presumed correct and will be set aside only if unsupported by substantial evidence. Kearse v. State Health & Human Servs. Fin. Comm'n, 318 S.C. 198, 456 S.E.2d 892 (1995). A record review reveals that substantial evidence supports the decision. The Mining Council acted within its authority in determining the MASC appeal was timely filed. We affirm the decision of the Circuit Court as to the timeliness of MASC's appeal.

III. The Mine Operating Permit
Appellants argue the Circuit Court erred in affirming the decision of the Mining Council requiring SCE & G to obtain a mine operating permit. Appellants contend the record supports only one conclusion: the activities of SCE & G regarding its dam remediation project are exempted from the definition of "mining" by virtue of being excavation conducted solely in aid of on-site construction. We disagree.
Appellants rely on the part of the Mining Act which, in defining what constitutes "mining" under the Act, states: "Mining does not include excavation or grading when conducted solely in aid of on-site farming or of on-site construction." S.C.Code Ann. § 48-20-40(1) (Supp.2003). Under Appellants' interpretation of the Act, the plain meaning of the exception dictates that any mine-related activities conducted solely in aid of on-site construction do not require a permit. See Ferguson v. Charleston Lincoln Mercury, Inc., 349 S.C. 558, 563, 564 S.E.2d 94, 97 (2002) ("When the statute's terms are clear and unambiguous, there is no room for an alternate construction, *148 and courts must apply them according to their literal meaning.").
At issue here is the definition of the word "excavation." While not defined in the statute, the parties submit that the literal definition of "excavation" is akin to that of "digging." The Mining Council heard extensive testimony that the SCE & G project, while involving a substantial amount of "excavation," would include blasting with dynamite, de-watering, crushing, stockpiling, and making concrete. The Act's broad definition of "mining" reads in part: "the breaking of the surface soil to facilitate or accomplish the extraction or removal of ores or mineral solids for sale or processing or consumption in the regular operation of a business." S.C.Code Ann. § 48-20-40(1)(a) (Supp.2003). There is substantial evidence in the record that the activities of SCE & G, while clearly falling under the Act's broad definition of "mining," go beyond mere "excavation" as contemplated in the exception.
We conclude Appellants, no matter how tenable their position on this issue, have failed to show the decision of the Mining Council was "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record," or "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." S.C.Code Ann. § 1-23-380(A)(6)(e), (f) (Supp.2003); Waters, 321 S.C. at 226, 467 S.E.2d at 917. The Circuit Court ruled: "It was not arbitrary and capricious, nor an abuse of discretion in the court's view for a group of experts in the field of mining to look at a project to construct the biggest quarry in South Carolina and determine that it is more than excavation in aid of on-site construction." We find the record contained" `such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" that the project went beyond the exception and required a mine operating permit. See Waters, 321 S.C. at 226, 467 S.E.2d at 917 (quoting South Carolina Dep't of Mental Retardation v. Glenn, 291 S.C. 279, 353 S.E.2d 284 (1987)).

CONCLUSION
We rule the Circuit Court correctly applied the APA's "substantial evidence" standard of review to the appeal from the Mining Council's order. There exists on the record substantial *149 evidence to support the order of the Mining Council. Accordingly, the decision of the Circuit Court is
AFFIRMED.
HUFF and KITTREDGE, JJ., concur.
NOTES
[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] S.C.Code Ann. §§ 48-20-10 to -310 (Supp.2003).
[3] It is unclear whether the Act grants a right of appeal to one aggrieved by a DHEC decision not to require a permit. See S.C.Code Ann. § 48-20-190 (Supp.2003). Because this issue was not raised below or on appeal, it is not now before this Court. See Mullinax v. J.M. Brown Amusement Co., 333 S.C. 89, 508 S.E.2d 848 (1998).