641 S.E.2d 909

**James M. HULL, Appellant,**

v.

**SPARTANBURG COUNTY ASSESSOR, Respondent.**

**No. 4210.**

Court of Appeals of South Carolina.

Submitted Jan. 1, 2007.

Decided Feb. 20, 2007.

</div>

Timothy E. Madden, of Greenville, for Appellant.

Edwin C. Haskell, III, of Spartanburg, for Respondent.

CURETON, A.J.:

James M. Hull appeals the circuit court's order affirming the Administrative Law Judge's (ALJ) order valuing Hull's property for the 2002 tax year. Hull contends the ALJ erred in failing to take into account the lessee's, K–Mart's, financial difficulties and the special purpose of the building in determining the value of the property. We affirm.

## FACTS

This appeal arises from a dispute regarding the 2002 tax valuation of the land and buildings located on Spartanburg County, Tax Parcel 6–20–08–004.01. The owner of the lease-hold estate for the property is H/S Super Spartanburg, L.P., which is represented by its president and general partner, Hull. Hull owns fifty percent of H.S. Super Spartanburg, L.P. Located on this property of approximately 21.7 acres is a special purpose 171,245 square-foot building, built in 1994, which is leased by K–Mart. A special purpose building of this type is referred to as a "big box."

The date that controlled the tax valuation for 2002 (tax control date) was December 31, 2001. The tax assessor valued the property at $12,343,400. Hull appealed the valuation to the ALJ.

The tax assessor testified he considered the physical location and the economic and financial characteristics surrounding the property. The tax assessor found the building was of good quality and very well located near an interstate, shopping mall, and many prime national tenants, such as Lowe's, Sam's, Circuit City, and Best Buy.

The tax assessor used the three standard approaches in valuing properties of this nature: cost approach, direct sales comparison approach, and income approach. According to the tax assessor the income approach "is of the utmost importance because buyers and sellers in essence buy such investment properties based on the income generating capacity of such properties." Utilizing the income approach, the tax assessor arrived at a value of $13,500,000 after considering the property's rent of $7.87 per square foot, which results in a yearly rent of $1,200,000, and then capitalizing the rental income.

Under the direct sales comparison approach, the tax assessor testified similar properties were selling from the high $50 to $80 per square foot on the tax control date. These findings led the tax assessor to value the property between $12,000,000 and $13,000,000 under the direct sales comparison approach. The tax assessor further emphasized the superiority of the income approach because on the tax control date, K–Mart was operating its business and paying rent according to its lease agreement. After using all three approaches, the assessor arrived at a valuation range of $12,000,000 to $13,500,000 and assessed the property at $12,343,400.

On the other hand, Hull's expert appraiser, Ashby Krouse, testified that the raw land was the only valuable aspect of the property. Krouse valued the property at $4,889,250. Krouse's valuation considered the history, anticipated actions by K–Mart, and credit worthiness of K–Mart. Krouse testified that on the tax control date, it was widely known that K–Mart was in financial trouble and that its stock had fallen to five dollars per share. K–Mart did not make its January 1, 2002 lease payment on this property, but was current in its lease payments on December 31, 2001. K–Mart filed Chapter 11 Bankruptcy on January 22, 2002. Not all K–Mart stores were closed. Hull testified K–Mart rejected its lease with Hull in February 2003.

At trial, the appropriate capitalization rate was heavily debated. Krouse explained "the net income from that property is capitalized by the capitalization rate to come up with a value of the subject property." Wal–Mart, a similar competitor, has a capitalization rate of approximately 8.5 to 9%, which according to Krouse, is indicative of Wal–Mart's high credit worthi-

ness. A low capitalization rate results in a high value. Hull prepared his own appraisals of the property and included a 10% and 12.5% capitalization rate in his appraisals. At trial, Hull testified he believed 13.5% would be a more appropriate rate, but insisted the property was only worth the value of the land.

The ALJ valued the property for the 2002 tax year at $10,215,000 based on a capitalization rate of 12.5%. The ALJ concluded that the 9% capitalization rate suggested by the tax assessor was inappropriate because the suggestions of bankruptcy and the drop in the price of K–Mart shares would cause a potential buyer, cognizant of the risk, to seek a higher return than the 9% assigned to the relatively stable competitor, Wal–Mart.

The ALJ's order was appealed to the circuit court. The circuit court affirmed the ALJ's order finding that there was ample evidence in the record to support the ALJ's conclusion that K–Mart was solvent on the tax control date and in compliance with its lease obligations on the property. The ALJ accepted the tax assessor's evaluation with the exception of applying a 12.5% capitalization rate. The circuit court concluded the ALJ's findings were supported by substantial evidence in the record. This appeal followed.

## STANDARD OF REVIEW

The review of an ALJ's order is confined to the record. *See* South Carolina Code § 1–23–610(C) (2005). "The findings of the agency are presumed correct and will be set aside only if unsupported by substantial evidence." *Kearse v. State Health and Human Servs. Fin. Comm'n*, 318 S.C. 198, 200, 456 S.E.2d 892, 893 (1995) (citation omitted). " 'Substantial evidence' is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action." *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981).

## LAW/ANALYSIS

### I. Property Valuation Regarding K–Mart's Financial Difficulties

Hull argues the ALJ erred by failing to fully consider K–Mart's financial difficulties in his property valuation. We disagree.

Section 12–37–930 of the South Carolina Code (Supp.2005) requires:

> All property must be valued for taxation at its true value in money which in all cases is the price which the property would bring following reasonable exposure to the market, where both the seller and the buyer are willing, are not acting under compulsion, and are reasonably well informed of the uses and purposes for which it is adapted and for which it is capable of being used.

"At least four methods exist for determining fair market value of property for taxation purposes: analysis of comparable sales, capitalization of gross income, capitalization of net income, and reproduction cost less depreciation and obsolescence." 72 Am.Jur.2d *State and Local Taxation* § 669 (2001). Under the income approach, the appraiser determines the net rental income the property will generate and then capitalizes the income at a rate a land purchaser would expect to obtain from the property. *Id.* Furthermore, the net income figure must reflect the appraiser's estimate of the property's earning potential, because the income approach "is based on the fundamental notion that the market value of income-producing property reflects the present worth of the future income stream." *Id.*

In the case at hand, the record reflects that the tax assessor used the cost approach, direct sales comparison approach, and the income approach in valuating the property. The tax assessor capitalized the projected rent of over $1,200,000 at an approximate rate of 9% and reached a figure of about $13,500,000 under the income approach. The record also reflects testimony from Hull that 13.5% would be a more appropriate capitalization rate, which would result in a value of $6,778,343 for the property. The record contains appraisals created by Hull for the property using capitalization rates of

10% and 12.5%. Conversely, Hull's expert, Krouse, testified that the property's value was only $4,889,250, the value of the land.

■ The income approach is a recognized method for valuing property, specifically when the property's value is largely based on rental income. *See S.C. Tax Comm'n v. South Carolina Tax Bd. of Review*, 287 S.C. 415, 339 S.E.2d 131 (Ct.App.1985). The ALJ properly applied the income approach by identifying the annual gross income as $1,347,275 and subtracting expenses to reach a net annual income of $1,276,822. The ALJ then capitalized the net income rate by 12.5%. The ALJ accounted for K–Mart's financial difficulties on the tax control date by utilizing a capitalization rate within the range of testimony, consistent with the evidence, and reflective of K–Mart's financial situation on the tax control date. Therefore, the record supports the ALJ's utilization of the income approach to determine the fair market value and the use of a 12.5% capitalization rate.

The ALJ's valuation was additionally supported by comparable rents in the area. The tax assessor testified the property in question rents for about $7.87 per square foot and the market rent for the neighborhood is approximately $7 per square foot. The tax assessor explained the amounts differ because the location of this property is prime. Hull also testified that the property was in "the best location in the community." The property is near an interstate, a shopping mall, and other national stores. Therefore, the difference of $0.87 per square foot in the rent value used by the tax assessor and the market's rental value is supported in view of the property's superior location.

## II. Deed Restrictions

Lastly, Hull argues the special purpose of the building is tantamount to a deed restriction restricting the building to use by K–Mart, which would affect the value of the property. We disagree.

■ In *Long Cove Home Owners' Ass'n, Inc. v. Beaufort County Tax Equalization Bd.*, 327 S.C. 135, 141, 488 S.E.2d 857, 861 (1997), the court interpreted section 12–37–930 to say that, "regardless of [the] method used to determine true value,

deed restrictions affecting the use of the land must be considered when determining value." Before the ALJ, Krouse testified that a special purpose, big box building like this K–Mart store could not be adapted for a similar, new tenant. He insisted the building would instead need to be torn down and the land made suitable for a new, big box store. If the landlord chose not to tear down the building, Krouse testified an option would be to use the building as a flea market. Hull estimated that a lease for a flea market would earn between $2 and $3 per square foot, significantly less than the current $7.87 per square foot K–Mart lease rental for the property.

Despite the difficulty in adapting the property for a subsequent big box retailer, on the tax control date, K–Mart was not in default on its lease. On the tax control date, the special purpose property was fulfilling its intended purpose of housing a K–Mart store. K–Mart did not reject its lease until February 2003. The ALJ accounted for concerns about K–Mart's financial status in arriving at the proper capitalization rate. Therefore, on the tax control date the difficulty of adapting the big box building was not a factor because K–Mart was utilizing the special purpose building for the purpose indicated in its lease. Additionally, speculation regarding the continuation of K–Mart's use of the building was considered by the ALJ.

## CONCLUSION

The property valuation by the ALJ considered the financial difficulties of K–Mart on the tax control date and substantial evidence supports the valuation. The special purpose building was being utilized for its intended purpose on the tax control date; therefore, the uniqueness of the building did not act as a deed restriction. Accordingly, the circuit court's order affirming the ALJ's decision is

**AFFIRMED.**

HUFF and BEATTY, JJ., concur.